IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| TECHNOLOGY INNOVATIONS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 2:10-CV-341-UA-DNF |
| v. | § | |
| | § | |
| NSTEIN TECHNOLOGIES, INC. AND | § | JURY DEMANDED |
| OPEN TEXT CORPORATION | § | |
| | § | |
| Open Text. | § | |

**DEFENDANTS NSTEIN TECHNOLOGIES, INC.'S AND
OPEN TEXT CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL PRINCIPLES ........................................................................................ 2

    A.  Summary Judgment of Non-Infringement .................................................. 2

    B.  Claim Construction .................................................................................... 3

    C.  Non-Infringement Analysis ........................................................................ 3

III.  CLAIM CONSTRUCTION ................................................................................. 5

    A.  Overview of the '613 Patent ...................................................................... 5

    B.  Construction of the "Determining Step" in the Asserted Claims ................ 7

        1.  "Determining Step" Requires a Security Policy .............................. 9

        2.  The "Present Invention" Uses a Security Policy ........................... 11

        3.  Reviewing a Security Policy Consistent with Problem Solved ....... 12

        4.  TILLC's "Construction" Doesn't Actually Construe Anything ......... 13

        5.  TILLC's Construction Renders the Limitation Meaningless ........... 14

        6.  TILLC's Construction Reads Security Out of the Claims ............... 16

        7.  Claim Construction Summary ....................................................... 19

IV.  SUMMARY JUDGMENT ................................................................................. 19

    A.  Accused Products Do Not Literally Infringe .............................................. 20

    B.  TILLC Acknowledges the Accused Products Do Not Make a
        Determination as to Whether a Security Policy is Violated ...................... 22

    C.  Accused Products Do Not Infringe Under Doctrine of Equivalents .......... 24

V.  CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Abbott Labs. v. Sandoz, Inc.,*
    566 F.3d 1282 (Fed. Cir. 2009) ........................................................................... 3

*Asyst Techs., Inc. v. Emtrak, Inc.,*
    402 F.3d 1188 (Fed. Cir. 2005) .................................................................... 5, 25

*Biogen, Inc. v. Berlex Labs, Inc.,*
    318 F.3d 1132 (Fed. Cir. 2003) ........................................................................... 3

*CollegeNet, Inc. v. ApplyYourself, Inc.,*
    418 F.3d 1225 (Fed. Cir. 2005) ......................................................................... 12

*CVI/Beta Ventures, Inc. v. Tura LP,*
    112 F.3d 1146 (Fed. Cir. 1997) .................................................................... 3, 13

*Digital-Vending Servs. Intern., LLC v. Univ. of Phoenix, Inc.,*
    672 F.3d 1270 (Fed. Cir. 2012) ......................................................................... 15

*E-LYNXX Corp. v. Innerworkings, Inc.,*
    No. 1:10-CV-2535, 2012 WL 4484921, *3 (M.D. Pa., Sept. 27, 2012)............... 13

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,*
    389 F.3d 1370 (Fed. Cir. 2004) ........................................................................... 4

*Honeywell Int'l., Inc. v. ITT Indus., Inc..,*
    452 F.3d 1312 (Fed. Cir. 2006) ......................................................................... 11

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n,*
    690 F.3d 1318 (Fed. Cir. 2012) ......................................................................... 16

*Kemin Foods, L.C. v. Omniactive Health Techs., Inc.,*
    No. 8:07-CV-1308-T-33TGW, 2009 WL 3157670, *2 (M.D. Fla. Sept. 27,
    2009 ....................................................................................................................... 4

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.,*
    324 F.3d 1308 (Fed. Cir. 2003) .................................................................... 5, 24

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) ................. 3, 9

*Moore USA, Inc. v. Standard Register Co.,*
    229 F.3d 1091 (Fed. Cir. 2000) ........................................................................... 4

*Netword, LLC v. Centraal Corp.,*
    242 F.3d 1347 (Fed. Cir. 2001) ............................................................................ 3

*Nystrom v. Trex Co., Inc.,*
    424 F.3d 1136 (Fed. Cir. 2005) .......................................................................... 18

*On Demand Mach. Corp. v. Ingram Indus., Inc.,*
    442 F.3d 1331 (Fed. Cir. 2006) .......................................................................... 18

*PC Connector Solutions LLC v. SmartDisk Corp.,*
    406 F.3d 1359 (Fed. Cir. 2005) ........................................................ 3, 4,19, 22, 25

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................... 3, 9, 15, 18, 19

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,*
    599 F.3d 1308 (Fed. Cir. 2010) .......................................................................... 14

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) ............................................................................ 4

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,*
    242 F.3d 1337 (Fed. Cir. 2001) ................................................... 3, 12, 18, 24, 25

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
    247 F.3d 1316 (Fed. Cir. 2001) ............................................................................ 4

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
    659 F.3d 1376 (Fed. Cir. 2011) .......................................................................... 17

*Verizon Servs. Corp. v. Vonage Holdings Corp.,*
    503 F.3d 1295 (Fed. Cir. 2007) ..................................................................... 3, 11

**STATUTES**

Fed. R. Civ. P. 56(c) ................................................................................................ 2

## I.      Introduction

This is a patent infringement case.  Technology Innovations, LLC ("TILLC") has wrongfully accused Defendants Nstein Technologies, Inc. and Open Text Corporation (collectively, Defendants are referred to herein as "Open Text")[1] of infringing two claims of United States Patent No. 6,829,613 (the "'613 Patent").[2]  The '613 Patent, as indicated by its title (*Techniques for Controlling Distribution of Information from a Secure Domain*)*,* provides for **secure** information distribution.  Reinforcing this theme of security, the '613 Patent describes the invention in the Abstract as:

> Techniques for controlling distribution of information from a **secure domain** by automatically **detecting outgoing messages which violate security policies** corresponding to the **secure domain**. . . . A determination is made, based on the classification of the outgoing message**, if distribution of the outgoing message would violate a security policy** for the **secure domain**. Distribution of the outgoing message is **allowed if no security policy is violated**.

Ex. A, Abstract (emphasis added).  The '613 Patent consistently characterizes the invention as maintaining information security by, for example, "controlling distribution of a message from a **secure domain**," "detecting outgoing messages which violate **security policies** [for a] **secure domain**," and "provid[ing] information **security**." 2:54-58, 4:20-25 and 14:47-51 (emphasis added).  Despite this unambiguous requirement of security in the '613 Patent, TILLC has accused four Nstein products[3] of infringing

---

[1] On May 28, 2010, TILLC filed suit against Nstein Technologies, Inc.  [Dkt. No. 1].  Nstein Technologies, Inc. was acquired by Open Text Corporation near the time of the filing of the suit.  In June of this year, TILLC added Open Text Corporation to the suit. [Dkt. No. 66].

[2] A copy of the '613 Patent is attached as Exhibit A (hereinafter all Exhibits will be referred to as "Ex. __ at __").  Citations to the specification of the '613 Patent will be in the following format: "Column No.:Line Nos." (*e.g.,* 4:20-25).

[3] TILLC has accused the following products of infringement:  Digital Asset Management  ("DAM"); Web Content Management ("WCM"); Semantic Site Search ("3S"); and Text Mining Engine ("TME") (collectively, the "Accused Products").  After Open Text Corporation acquired Nstein Technologies, Inc., the 3S product was renamed Open Text Semantic Navigation and the TME product was renamed Open Text Content Analytics.

Claims 1 and 23 (the "Asserted Claims") of the '613 Patent, despite the fact that the parties agree that none of the Accused Products perform any form of security review.

Although TILLC's accusations of infringement are insupportable on numerous grounds, Open Text believes that this case can be fully resolved by having the Court partially construe a single limitation in the Asserted Claims - namely, the claim language "determining if the message can be distributed to the recipient" (hereinafter, the "determining step") – and then confirming that the Accused Products do not infringe the Asserted Claims under the proper construction.[4]   When properly construed, the "determining step" requires "*determining if the distribution of the message to the recipient would violate any predefined security policy.*"  The Accused Products do not do that and, importantly, there is no dispute between the parties on this point.[5]   Because the only issue between the parties in this motion relates to claim construction, which is a matter of law for the Court, summary judgment is appropriate.  Accordingly, Open Text requests that the Court adopt its proposed construction for the determining step and grant its motion for summary judgment of non-infringement.

## II.     Legal Principles

### A.      Summary Judgment of Non-Infringement

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

---

[4] As is reflected in the chart attached as Exhibit H, Open Text does not agree with and refutes all of TILLC's proposed constructions for the Asserted Claims.  However, for the purposes of this motion, it is not necessary for the Court to interpret any limitation other than a portion of the "determining step."

[5] By changing its originally proposed claim constructions to remove entirely any security requirement from the Asserted Claims and, further, by admitting in testimony it was "not enforcing security in this patent," TILLC has acknowledged the Accused Products do not perform any security review to decide whether or not to distribute the message.  *See* Deposition of Michael Weiner, at 197:14-15, excerpts attached hereto as Exhibit B.

Civ. P. 56(c).   "Evaluation of a summary judgment of noninfringement requires two steps:  claim construction . . . and comparison of the properly construed claims to the accused product, process, or composition of matter."  *Abbott Labs. v. Sandoz, Inc.,* 566 F.3d 1282, 1288 (Fed. Cir. 2009); *see also, PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1362 (Fed. Cir. 2005).

### B.    Claim Construction

Claim construction is a question of law for the Court.  *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  In claim construction, "the claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).   In addition, the claims must be "read in view of the specification, of which they are a part."  *Markman,* 52 F.3d at 979.   The patent specification "provides necessary context for understanding the claims."  *Abbott Labs.*, 566 F.3d at 1288.  Claims must also be read in light of the problem the invention was intended to solve.  *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1160 (Fed. Cir. 1997).  Additionally, claims may not "enlarge what is patented beyond what the inventor has described as the invention."  *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) (quoting *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001)).  Moreover, the claim scope must include features described as part of the "present invention" as a whole.  *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

### C.    Non-Infringement Analysis

After construing the claim, the Court must compare the accused product or

method to the properly construed claims.  *PC Connector*, 406 F.3d at 1362.  Whether the device or method falls within the claims is a question of fact.  "Summary judgment on the issues of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  *Id.* at 1364.

Literal infringement requires that the accused product embody literally every element of the claim.  *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, No. 8:07–cv–1308–T–33TGW, 2009 WL 3157670, *2 (M.D. Fla. Sept. 27, 2009)(citing *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int' l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004)).  "Any deviation" from the claim language precludes a finding of literal infringement.  *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

Under the doctrine of equivalents, if an element is not literally present in the accused product, a product may still infringe if an element with "insubstantial differences" is present.  *See Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed. Cir. 1997)(citation omitted)("A claim element is equivalently present in an accused device if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device.").  Although "equivalence" is a question of fact, summary judgment is still appropriate when no reasonable juror could conclude that the differences between the required element and the "equivalent" element were insubstantial.  *See Moore USA, Inc. v. Standard Register Co.,* 229 F.3d 1091, 1106 (Fed. Cir. 2000) (no reasonable juror could find that the difference between "minority" and "majority" was insubstantial).  Moreover, an element of an

accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 324 F.3d 1308, 1321 (Fed. Cir. 2003); *Asyst Techs., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005).

## III.   Claim Construction

### A.      Overview of the '613 Patent

The '613 Patent is about security.  From the title of the patent through the entirety of the specification, the invention described and claimed in the '613 Patent centers on security.[6]  As noted in the Summary of the Invention, the '613 Patent describes "a system, method and computer program for controlling distribution of a message from a **secure domain** to a destination outside the **secure domain**."  2:54-57 (emphasis added).   More specifically, the specification defines "**the *present invention***" as controlling "distribution of information crossing the boundary of a secure domain **by automatically detecting outgoing messages which violate security policies** corresponding to that **security domain**."  4:21-24 (emphasis added); *see also,* '613 Patent, Abstract (determining "if distribution of the outgoing message would **violate a security policy** for the **secure domain**") (emphasis added).  This description of the invention is mirrored in Appendix A of the '613 Patent, the "GUARD-IT" proposal.[7] Specifically, the GUARD-IT proposal states:

---

[6] The terms "secure" and "security" are used over 200 times in the specification of the '613 Patent. *See* Ex. G (listing all of the uses of "secure" or "security" in the '613 Patent).

[7] Appendix A to the '613 Patent is a government proposal entitled Broad Agency Announcement:  BAA 98-34; Proposal Title:  "GUARD-IT" ("GUARD-IT").  Not only does GUARD-IT form part of the specification of the '613 Patent, but, as Mr. Weiner told the patent office under oath, the "invention" of the '613 Patent is "based on" GUARD-IT.  *See Declaration of Michael Weiner in Support of Petition for Filing Patent Application Under 37 CFR § 1.47(b),* a true and correct copy of which is attached hereto as Exhibit K. GUARD-IT is attached to U.S. Patent Application 10/137,740, a true and correct copy of which is attached as Exhibit J.

> The GUARD-IT system will automatically **detect whether any messages crossing a given domain violate the security policy** corresponding to the domain. . . .  The correspondence between the content of a message and the semantic model of a classified topic will **determine whether the security policy would be violated by sending the message across the domain boundary**.

GUARD-IT at 14 (emphasis added).

This focus on security is also demonstrated by the description in the '613 Patent of the problem that the invention was designed to address – namely, to "prevent [the] spread of sensitive information from **secure domains** to the **non-secure** outside world." 1:56-58 (emphasis added).   As described in the specification, the traditional way of handling this problem was by manually monitoring information:

> Traditionally, organizations have attempted to reduce information leakage by **employing security personnel who manually monitor the contents of information carrying messages** which originate in a **secure domain** and whose destination lies outside the **secure domain** or of messages whose sender is a member of a **secure domain** but whose recipient is not a member of the **secure domain**. The outgoing messages are allowed to leave the boundaries of the secure domain **only if the contents of the outgoing messages do not violate predefined security policies for that secure domain**. While this approach is effective in controlling the spread of sensitive information, it is very human resource intensive and thus very expensive.

2:8-20 (emphasis added).  The prior art "security products" described in the '613 Patent employed techniques that relied on "keyword" or "dirty word" lists in monitoring the contents of outgoing messages, and they would "flag outgoing messages which contain one or more keywords contained in the keyword list or dirty word list." 2:34-36.[8]

However, the patentee stated that these conventional prior art techniques of controlling

---

[8] The '613 Patent describes these prior art products as follows:
Currently, a number of **security products** are available which automate the task of controlling the dissemination of information from a **secure domain**. These **security products** are designed to monitor the contents of outgoing messages passing from **secure domains** and **flag those messages which violate security policies**. 2:21-26 (emphasis added).

distribution of messages from a secure domain were "plagued by errors and inconsistencies and as a result could not assure information security." 2:46-48. Thus, according to the patentee, "**there is a need for a system and method which can provide greater information security than that offered by prior art techniques**." 2:49-51 (emphasis added).

The techniques described in the '613 Patent purport to solve these problems experienced by the prior art by focusing on the "meaning" of the message, rather than just the words in the message. Using the claimed invention, those seeking to control the flow of information out of a secure domain could make determinations based on the meaning of outgoing messages rather than just on keywords or dirty words. 14:32-34. As noted in the specification:

> **This presents a significant advance** over conventional boundary controllers based on "dirty word" lists which use simple keyword matches to perform boundary control. As a result, **the present invention provides a customizable content-based information security tool which provides information security** while **substantially minimizing the number of human resources needed** to provide the information security.

14:44-51 (emphasis added). Importantly, as described by the patentee, the invention of the '613 Patent doesn't *remove* the need for security; rather, its purpose is to provide a "security tool" that is *more effective* than prior art methods for providing such security.

**B.    Construction of the "Determining Step" in the Asserted Claims**

The Asserted Claims are set out below with the "determining step" limitation underlined. As noted, Open Text's motion for summary judgment only requires construction of a portion of the "determining step" (underlined below):

1.    A computer-implement method of controlling distribution of a message from a sender to a recipient, the method comprising:
    constructing semantic models for a plurality of message categories;

7

constructing a semantic model for the message;

comparing the semantic model of the message with the semantic models for the plurality of message categories;

classifying the message based on the comparison; and

determining if the message can be distributed to the recipient based on the classification of the message.

23.    A computer program product for controlling distribution of a message from a sender to a recipient, the computer program product comprising:

code for constructing semantic models for a plurality of message categories;

code for constructing a semantic model for the message;

code for comparing the semantic model of the message with the semantic models for the plurality of message categories;

code for classifying the message based on the comparison;

code for determining if the message can be distributed to the recipient based on the classification of the message; and

a computer-readable medium for storing the codes.

Ex. A, '613 Patent, Claims 1 and 23.

The following table sets out the disputed constructions of the parties for the "determining step" (the bolded portion being the portion needing construction for purposes of this motion):

| Claim Limitation from the Asserted Claims | TILLC's Construction | Open Text's Construction |
|---|---|---|
| **determining if the message can be distributed to the recipient** based on the classification of the message. | **determining if the message is capable of being distributed to the recipient** based at least in part on the classification of the message. | **determining if the distribution of the message to the recipient would violate any predefined security policy** using the security levels of the message categories to which the message was previously identified as belonging. |

The parties disagree on two points with respect to the interpretation of the "determining step" – "what" is being determined (the "determining if the message can be distributed to the recipient" portion of the limitation) and "how" is it being determined (the "based on the classification of the message" portion of the limitation).  However,

resolution of this motion for summary judgment requires the Court to construe only the "determining if the message can be distributed to the recipient" portion of this limitation.[9]

The difference between the parties' proposed constructions comes down to one issue:  does "determining if the message **can be** distributed to the recipient" require performing a security check before distributing the message, or not?  In other words, what does it mean to determine if the message "can be" distributed.  Open Text's proposed construction requires a security check, while TILLC's does not.  In doing so, Open Text's construction relies on the language of the specification and is consistent with the described purpose of the invention as a whole.  TILLC's construction, on the other hand, merely restates the limitation and improperly reads "security" out of the '613 Patent.  Thus, Open Text's proposed construction should be adopted.

### 1.   "Determining Step" Requires a Security Policy

The difference between the parties as to the construction of "determining if the message can be distributed" could not be more stark:  Open Text proposes that this step requires determining whether distribution of the message would "violate any predefined security policy."  In contrast, TILLC's proposed construction does not include any security requirement at all.

As reminded by the Federal Circuit in *Phillips*, "the claims must be read in view of the specification, of which they are a part."  *Phillips,* 415 F.3d at 1315 (citing *Markman*, 52 F.3d at 979).  The specification of the '613 Patent defines the invention as follows:

---

[9] The portion of the "determining step" limitation which needs to be construed has been **bolded** in the table with specific terms underlined to point out the differences in the parties' proposed constructions.  As is reflected in the table and in the chart attached as Exhibit H, Open Text also does not agree with and refutes TILLC's proposed constructions for the remaining claim limitations, including the remaining portion of the "determining step" limitation (namely, the "based on the classification of the message" portion of the limitation).

"**[t]he present invention is** a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain **by automatically detecting outgoing messages which violate security policies** corresponding to that security domain."   4:21-24 (emphasis added).   More specifically, the specification consistently describes the "determining step" as requiring an analysis of whether a security policy is violated:

> A _**determination**_ **is made**, based on the classification of the outgoing message_,_ **if distribution of the outgoing message** _would violate a_ _**security policy**_ for the secure domain. Distribution of the outgoing message is allowed **if no** _**security policy is violated**_.   Exhibit A, '613 Patent, Abstract (emphasis added);

> The task of controlling flow of information from a secure domain typically involves classifying the information carrying message into one or more categories based on the contents of the message, followed by _**determining**_ **if the message** _**violates any security policies**_ **based on the classification**. 5:59-64 (emphasis added);

> The outgoing message classification information is then passed to security checker 132 which _**determines**_ **whether the distribution of the outgoing message to its recipients** _**violates a user-defined security policy**_.   12:50-53 (emphasis added);

> A security officer will be required to review messages only when the system cannot make a definite _**determination**_ **about whether a message** _**violates security policy**_.   Appendix A, GUARD-IT at 2; and

> Messages whose meaning overlaps to a sufficient extent with a semantic model of a classified topic _**will be flagged**_ **as being in** _**violation of security policy**_.   Appendix A, GUARD-IT at 16.

In fact, the '613 Patent does not describe any way of "determining" whether a message "can be distributed" to a recipient other than by determining if the message violates a security policy.   Thus, according to the specification, the "determining step" requires examining the message against a security policy in order to decide whether the message should be sent out of the secure domain.

Open Text's proposed construction of the "determining step" does precisely that by stating "determining if the distribution of the message to the recipient <u>would violate any predefined security policy</u>."   In contrast, TILLC's proposed construction of the "determining step" includes no mention of "security" whatsoever, and certainly does not include any requirement to examine a security policy to determine whether or not to distribute the message as described in the '613 Patent**.**

**2.     The "Present Invention" Uses a Security Policy**

Further, this is not a situation where Open Text is attempting to import a limitation from an embodiment of the invention into the claims.   To the contrary, determining if the distribution of the message would violate a security policy is not merely an example of the invention, it *is* the invention.   The patentee expressly describes determining if messages violate a security policy as the ***"present invention"***:

> <u>**The present invention is**</u> a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain **<u>by automatically detecting outgoing messages which violate security policies</u>** corresponding to that security domain.

4:21-24 (emphasis added).

By describing this feature of determining whether a security policy is violated as part of the "present invention," the patentee limited the scope of the claimed invention to include that feature.   *See Verizon Servs. Corp.,* 503 F.3d at 1308 ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (citing *Honeywell Int'l., Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1318-19 (Fed. Cir. 2006)).   Put another way, any method or system that does *not* include the feature of determining whether or not a security policy would be violated *is*

*not* this invention.[10]   By inappropriately attempting to remove the feature of reviewing a security policy from the "determining step," TILLC seeks to have the Asserted Claims encompass the *opposite* of what the patentee described as the "present invention."  *See SciMed*, 242 F.3d at 1343 ("[T]he characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure.").   In other words, TILLC's proposed construction of the Asserted Claims that *does not* require any review of a security policy should be rejected because it covers *exactly the opposite* feature as that described by the patentee as being part of the "present invention."

### 3.   Reviewing a Security Policy Consistent with Problem Solved

Open Text's proposed construction of the "determining step" is also consistent with the problem that the '613 Patent was addressing.  Specifically, the patent describes the problem with the prior art as being the expensive, time consuming and ineffective process of human involvement in "manually monitor[ing] the contents of information carrying messages" to try to ensure the "contents of the outgoing messages do not violate predefined security policies for that secure domain."  2:8-48.   Open Text's proposed construction of "determining if the distribution of the message to the recipient would violate any predefined security policy" captures this allegedly fundamental aspect of the '613 Patent – namely, automating the previously manual process of preventing distribution of messages in violation of security policies.  *See, e.g., CollegeNet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1235 (Fed. Cir. 2005) (finding the district court's construction was "consistent with one of the problems the invention sought to redress").

---

[10]   In fact, it would be the prior art.   By eliminating any security requirement, TILLC's current constructions read directly onto a significant amount of prior art, including an earlier patent which names Mr. Weiner as an inventor. *See* Exhibit I.

In contrast, TILLC's proposed construction, in which the "determining step" has no requirement to determine if the message violates a security policy (and, in fact, no "security" requirement at all), flies in the face of the problem the invention seeks to address.  The patentee unambiguously states that "**there is a need for a system and method which <u>can provide greater information security</u> than that offered by prior art techniques**."  2:49-51 (emphasis added).  Thus, the patentee's invention is intended to address a need for a system that provides *greater security*, not a need for an invention that does not provide ***any security***.  TILLC's proposed construction of the "determining step" as simply "determining if the message <u>is capable of being distributed</u> to the recipient" does not require any security analysis whatsoever and does not address the problem the invention alleges to resolve.  It should, therefore, be rejected.  *See CVI/Beta Ventures,* 112 F.3d at 1160 (claims must be interpreted in light the problem the invention was intended to solve).

### 4.    TILLC's "Construction" Doesn't Actually Construe Anything

TILLC's proposed construction of the "determining step" merely restates the claim language without providing any meaningful construction of this limitation.  According to TILLC, determining if the message "can be" distributed simply means determining if the message "is capable of being" distributed.  Rather than actually *construing* the claim language, TILLC simply substitutes the phrase "is capable of being" for the phrase "can be" in the claim language itself.  This minimal substitution of synonymous words provides no meaningful help to the jury in understanding what the claim term means; and, if it does not help the jury, it cannot be a useful jury instruction.  *E-LYNXX Corp. v. Innerworkings, Inc.*, No. 1:10–CV–2535, 2012 WL 4484921, *3 (M.D.

Pa. Sept. 27, 2012)("[T]he central purpose is to aid the jury").  *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1322 (Fed. Cir. 2010) ("Claim construction is a matter of law, and it is essential that the jury be correctly instructed on the law, lest the entire trial be tainted.").  Furthermore, the phrase "is capable of being" is never used in the specification.[11]  TILLC's alleged construction is simply not one, and as such should be rejected.

### 5.    TILLC's Construction Renders the Limitation Meaningless

TILLC's proposed construction for the "determining step" should also be rejected because, when combined with TILLC's proposed construction for the claim term "message," the "determining step" limitation is rendered meaningless.   Specifically, TILLC has proposed that the claim term "message" be construed as follows:

> An electronically stored item that holds information and **is capable of being transmitted** electronically.  The message can have a variety of different forms, including, for example, a document, a web page, or an email message.

Ex. E, at 5.  Thus, according to TILLC, by definition, a "message" is something that "***is capable of being* transmitted**."  At the same time, TILLC proposes that the phrase "determining if the message can be distributed to the recipient" be construed to mean "determining if the message ***is capable of being* distributed**."  However, because the terms "transmitted" and "distributed" mean the same thing in the context of '613 Patent, if a message is capable of being "transmitted," it must also be capable of being "distributed" just by virtue of the fact that it is a message.

---

[11] TILLC actually relies on the same intrinsic support as Open Text (discussed above), none of which uses the phrase "capable of being."

The '613 Patent uses a form of the word "distribute" to describe sending messages over forty (40) times.[12]   The '613 Patent only uses a form of the word "transmit" a single time (as follows):

> In particular, communication techniques such as electronic mail (E-Mail), electronic faxes, and the like, have made the networks of these organizations susceptible to information leakage problems whereby sensitive information is **transmitted** to unauthorized users by processes/entities with legitimate access to the information.

1:57-63.   This use of the term "transmitted" in the '613 Patent is synonymous with the uses of the term "distributed" in the '613 Patent to describe the act of "sending" messages.

Since TILLC defines a "message" as something that "is capable of being transmitted," then a message is, under the '613 Patent, something that is capable of being distributed.   Therefore, TILLC's proposed construction of the "determining step" to mean "**determining** if the message is **capable of being distributed**" is not only meaningless, it is superfluous.[13]   There is no need to "determine" if a message is capable of being distributed because a message *is*, by TILLC's own definition, something that is capable of being distributed.   TILLC's proposed construction which renders the "determining step" meaningless and superfluous should be rejected. *Digital-Vending Servs. Intern., LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012)(citing *Phillips*, 415 F.3d at 1314)("In *Phillips*, this court reinforced the importance of construing claim terms in light of the surrounding claim language, such

---

[12] For example, in the Title, Abstract and the Asserted Claims.   *See also,* 3:20-22 ("In case of a security policy violation, the present invention may prevent distribution of the message to the recipient"); 12:66 to 13:2 ("If no security policy is violated, the outgoing message may be forwarded to a mail server 140, for example a POP server, for distribution to its recipients.").

[13] Further illustrating the meaningless and superfluous nature of TILLC's proposed construction, when TILLC's proposed construction for "message" is actually inserted into TILLC's proposed construction for the "determining step" it reads "determining if the [electronically stored item that holds information **and is capable of being** transmitted electronically] **is capable of being distributed**."

that words in a claim are not rendered superfluous."); *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1325 (Fed. Cir. 2012).

### 6.      TILLC's Construction Reads Security Out of the Claims

Ultimately, TILLC's proposed construction should be rejected because it is nothing more than a naked attempt to improperly read "security" out of the Asserted Claims.

Tellingly, TILLC originally agreed with Open Text that the "determining step" included a security requirement.   In May 2011, responding to an interrogatory request, TILLC provided its initial proposed constructions for each of the terms of the Asserted Claims and proposed the following construction for the "determining step":

> **"controlling the flow of information into or out of a system, <u>such as by a boundary controller</u>"**

Ex. D, at 5 (emphasis added).  In May 2011, TILLC understood the "determining step" required controlling information flow using something like a "boundary controller."  The term "boundary controller" is defined as follows in the '613 Patent:

> Currently, a number of ***security products*** are available which automate the task of **controlling the dissemination of information from a secure domain**. These ***security products*** are designed to monitor the contents of outgoing messages passing from secure domains and **flag those messages which violate security policies**. **These tools are commonly referred to as <u>*"boundary controllers"*</u>** since they monitor the contents of outgoing messages crossing the boundary of a secure domain to the outside world.   An example of such a ***security product*** is the MINEsweeper product from Integralis (Content Technologies, Inc.).

2:20-31 (emphasis added); *see also*, 2:32-48, 4:20-25, 5:46-53, 9:59-10:8, 10:9-20, 11:65-12:60, and 14:32-51.   Since a boundary controller is a security product that identifies messages that violate security policies, TILLC's original proposed construction of the "determining step" required controlling the flow of information into or out of a

system, such as by a security product that flags those messages which violate security policies.   Thus, consistent with Open Text's proposed construction, TILLC initially agreed that the "determining step" required some form of security check.

TILLC's change of heart came after reviewing the source code and technical documents/manuals for the Accused Products, which Open Text produced for inspection by TILLC and its experts back in February of this year.   *See* Declaration of Scott Crocker, Attachment 1 to this motion, ¶12.  Shortly after several inspections of the source code, in July, 2012, TILLC significantly modified its proposed claim constructions for the Asserted Claims; and notably, with respect to the "determining step," TILLC changed its proposed construction to the following:

> "determining if the message is capable of being distributed to the recipient based at least in part on the classification of the message"

Ex. E at 7.[14]   TILLC's radically altered construction not only deleted the reference to controlling information using a "boundary controller," but went further to completely remove *any* reference to performing any "security" review of the message.[15]

However, this patent **is about security**.   *See supra* III.B, C.1-C.4.  The patent's description of the invention is unambiguous on this point:

> "**the present invention is** a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain **by automatically detecting outgoing messages which violate security policies** corresponding to that security domain.   4:21-24

---

[14] Attached as Exhibit C is a chart containing all of TILLC's original and amended proposed claim constructions.

[15] It is no coincidence that TILLC removed the "security" requirement from its proposed constructions after reviewing the source code and technical manuals for the Accused Products.  As discussed further below, the Accused Products do not perform any security review of the search results prior to distribution.  TILLC's revised proposed construction of the "determining step" was developed solely to establish an infringement position and, as such, should be rejected (particularly in light of its original construction that acknowledged a security requirement).  *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011) ("It is not inappropriate for a court to consider the accused devices when construing claim terms, for the purpose of "claim construction" is to resolve issues of infringement.")

(emphasis added);

> As a result, **the present invention provides a customizable content-based information security tool which provides information security** while substantially minimizing the number of human resources needed to provide the information security.  14:44-51 (emphasis added).

More particularly, the "determining step" **is about reviewing security policies**.  The

patent's description of the "determining step" is likewise clear:

> **A *determination* is made**, based on the classification of the outgoing message*, **if distribution of the outgoing message *would violate a security policy*** for the secure domain. Distribution of the outgoing message is allowed **if no *security policy is violated***.   Exhibit A, '613 Patent, Abstract (emphasis added);

> The task of controlling flow of information from a secure domain typically involves classifying the information carrying message into one or more categories based on the contents of the message, followed by ***determining* if the message *violates any security policies* based on the classification**. 5:59-64 (emphasis added); and

> The outgoing message classification information is then passed to security checker 132 which ***determines* whether the distribution of the outgoing message to its recipients *violates a user-defined security policy***. 12:50-53 (emphasis added).

The "present invention" of the '613 Patent provides "security," and more particularly,

does so by "determining" if the message "violates a security policy."   TILLC is not

entitled to a construction divorced from the context of the written description in its

patent.  *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005); *On

Demand Mach. Corp. v. Ingram Indus., Inc.,* 442 F.3d 1331, 1339-40 (Fed. Cir. 2006).

Not only does TILLC's proposed construction fail to align with the description in the '613

Patent, it takes the opposite position (that no security is required at all).  *See Phillips*,

415 F.3d at 1316; *SciMed*, 242 F.3d at 1343 ("characterization of the coaxial

configuration as part of the 'present invention' is strong evidence that the claims should

not be read to encompass the opposite structure").

### 7.    Claim Construction Summary

Open Text's proposed construction of "determining if the distribution of the message to the recipient would violate any predefined security policy" is fully supported by the specification, consistent with the description of the "present invention" and takes into account the problem being solved.  In contrast, TILLC's proposed construction does not actually construe anything, renders the limitation superfluous and, most importantly, utterly fails to take into account the core "security" aspect of the invention described in the '613 Patent.  Accordingly, Open Text respectfully requests that the Court adopt its proposed construction.  *See Phillips*, 415 F.3d at 1316 ("The construction that . . . most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (citation omitted).

## IV.   Summary Judgment

Open Text moves for summary judgment of non-infringement of the Asserted Claims by the Accused Products because the Accused Products do not perform the step of "determining if the message can be distributed to the recipient based on the classification of the message" as recited in the Asserted Claims.  *See PC Connector*, 406 F.3d at 1364 ("Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim . . . is . . . found in the accused device.").  When properly construed, this step requires "determining if the distribution of the message to the recipient violates any predefined security policy," based on the classification of the message.  The fact that the Accused Products do not perform such a security check is undisputed by the parties.  As there is

no genuine issue of material fact with respect to the fact that the Accused Products do not meet this limitation when properly construed, Open Text is entitled, as a matter of law, to a judgment that the Accused Products do not infringe the '613 Patent.  *Id.*

### A.    Accused Products Do Not Literally Infringe

None of the Accused Products satisfy the "determining step" of the Asserted Claims.  The DAM product is a digital asset management system, which includes a central repository/database for a company's digital assets (*e.g.*, photographs, video, etc…) and a platform for storing, archiving and retrieving information from this repository.  *See* Declaration of Agostino Deligia ("Deligia Decl."), Attachment 2 to this motion, ¶4. Similarly, the WCM and 3S products also allow users to search and retrieve information from document repositories.   Deligia Decl., ¶¶11 & 13.   When providing the users of these products with content that satisfies the user's search request, none of these products review the search results to determine whether the distribution of the search results would violate a security policy.  Deligia Decl., ¶¶9, 12, 14, 16 & 17.  The TME is a different kind of product that analyzes documents to create enriched data about the analyzed documents. While it can be used with the other Accused Products, the TME product does not, itself, allow users to make searches or provide results that satisfy searches.  Therefore, by definition, TME does not analyze search results to determine if they violate a security policy.  Deligia Decl., ¶¶15-16. Therefore, as demonstrated by the evidence provided by Open Text, none of the Accused Products literally infringe the Asserted Claims because none of the Accused Products perform the step of "determining if the distribution of the message to the recipient violates a predefined security policy."

This is further confirmed by TILLC's most recent infringement contentions for the DAM product (using TILLC's revised claim constructions):

> [TILLC] contends that any document contained in the "search results" retrieved by the DAM user qualifies as a claim 1 "*message*." The transmission of the search results (including the sought-after document) from the document repository (TEXTML business database) to the user qualifies as "*distribution of a message*." . . . The use of DAM is therefore a "method of controlling distribution of a message." The DAM user who is seeking the document (*e.g.*, using the Search box) qualifies as the "*recipient*" of the "*message*."

Ex. F, at E2 and F2. Thus, according to TILLC, the transmission of search results from the DAM product to the user of the DAM product is the "distribution of a message." While Open Text disagrees with TILLC's claim construction position on this point, even assuming *arguendo* that "search results" are "messages" distributed to a "recipient," it is undisputed that the DAM system does not determine if "the distribution of the search results . . . to the user" would violate a predefined security policy. Deligia Decl., ¶9. Open Text's testimony on this point is unambiguous; the DAM product does not determine if distribution of search results would violated a predefined security policy. *Id.* Furthermore, in its updated infringement contentions, TILLC has pointed to no evidence that the Accused Products perform any security review, much less a review to determine if a security policy would be violated by distributing the message. *See* Ex. F.[16] Thus, TILLC confirms by its silence that the DAM product does not determine if distribution of the search results would violate a security policy. Accordingly, the DAM product does not meet the "determining step" limitation and summary judgment of non-infringement with respect to the claims asserted against the DAM product is warranted.

---

[16] This is true despite the fact that TILLC has had access to not only the technical manuals/documents but also the *source code* of the Accused Products for over nine months. In its updated infringement contentions, TILLC did not cite a single line of source code or a single reference in a TILLC document for support that the DAM product met the "determining step." Ex. F, at E9 and F9.

Similarly, the WCM and 3S products present search results to a user that has performed a search using those products. Like the DAM product, neither the WCM product nor the 3S product determines if the distribution of such search results to the user of the product would violate a security policy. Deligia Decl., ¶¶12 & 14. TILLC's silence is once again deafening on this point. TILLC has provided no evidence that the WCM or 3S products make a determination of whether sending the search results would violate a security policy (or perform any security check whatsoever) before distributing the search results.[17] Accordingly, as shown by Open Text's evidence, and confirmed by TILLC's lack thereof, neither the WCM nor the 3S products meet the "determining step" limitation of the Accused Claims, and summary judgment of non-infringement with respect to the claims asserted against all of the Accused Products is warranted.[18] *PC Connector*, 406 F.3d at 1364.

### B. TILLC Acknowledges the Accused Products Do Not Make a Determination as to Whether a Security Policy is Violated

As confirmed by TILLC's actions and testimony in this case, TILLC does not dispute the fact that the Accused Products do not perform the act of "determining if the distribution of the message to the recipient violates a predefined security policy" (or, in fact, any security review). Tellingly, after reviewing both the source code and the technical documents/manuals of the Accused Products, TILLC changed its original claim construction of the "determining step" to remove any "security" requirement from

---

[17] In fact, TILLC has failed to even produce infringement contentions based on its current constructions with respect to these other Accused Products. However, any infringement contention by TILLC would fail with respect to these other Accused Products for the same reasons provided with respect to the DAM product.

[18] TILLC does not assert that the TME product independently infringes the '613 Patent. Instead, TILLC's claims with respect to the TME product are directed to its use by the other three Accused Products, in providing metadata that can be searched. *See, e.g.,* Ex. F at E5 and E6. Thus, because summary judgment of non-infringement is proper as to the other Accused Products, summary judgment of non-infringement is also proper as to the TME product.

its proposed constructions.  *See Infra* III, B, 6.  The only logical conclusion to draw from this about-face is that TILLC confirmed through its review of the source code and technical documents/manuals that the Accused Products do not, in fact, check to determine whether a security policy would be violated (or perform any security review).

TILLC's testimony under oath further confirms that TILLC understands the Accused Products do not perform a security check, and therefore TILLC was forced to alter its constructions for the Asserted Claims to remove any such requirement.  At his deposition as a FRCP 30(b)(6) corporate representative of TILLC in July, 2012, Mr. Weiner was asked about TILLC's construction of the determining step.[19]  In response to this questioning, Mr. Weiner testified that "[TILLC is] not enforcing security in this patent."  Ex. B, 197:14-15.  Thus, despite the fact that the '613 Patent has a stated purpose of providing "security," includes "security" in the title, uses the term "security" over 200 times in the specification, and describes the "present invention" as one that controls distribution of messages by detecting messages that "violate security policies," TILLC's testimony under oath is that it is "not enforcing security" in the '613 Patent.  The only rational explanation for not enforcing security in a patent that repeatedly emphasizes security (and, in fact, changing its originally proposed constructions to remove any reference to security the afternoon before this deposition), is that TILLC examined the source code and technical documents/manuals for the Accused Products and determined that TILLC *could not do so.*  In other words, upon discovering that the Accused Products did not perform any security check, and specifically upon discovering that the Accused Products did not determine whether "distribution of the message to the recipient violates any predefined security policy, TILLC altered its claim construction to

---

[19] TILLC provided its changed constructions the afternoon before Mr. Weiner's deposition.

remove any reference to "security" and took the position, under oath, that it "was not enforcing security in this patent."   Ex. B, 197:14-15.   TILLC's reversal of its claim construction position and its testimony speak volumes about the capabilities of the Accused Products – namely, that the Accused Products do not determine whether "distribution of the message to the recipient violates any predefined security policy" as required under a proper construction of the "determining step."   By its actions and testimony, TILLC confirms that there is no dispute that the Accused Products do not meet this limitation and that summary judgment of non-infringement of the Asserted Claims is appropriate and warranted.

### C.    Accused Products Do Not Infringe Under Doctrine of Equivalents

TILLC contends that "each claim limitation is met literally, and if not met literally then it is met under the doctrine of equivalents."  Ex. E, at 8.  However, TILLC goes on to contend "the same facts upon which TILLC's literal infringement claim is based will also form the basis of TILLC's doctrine of equivalents claim . . . ."  *Id.* at 8-9.  Therefore, as with literal infringement, TILLC has failed to put forth any facts or evidence that establish how the "determining step" limitation is met by the Accused Products under the doctrine of equivalents.  Ex. F, at E9 and F9.  In contrast, Open Text has provided evidence that the Accused Products do not determine if delivery of search results would violate a predefined security policy.  Deligia Decl., ¶¶9, 12, 14, 16 & 17.

Furthermore, under the doctrine of vitiation, TILLC may not invoke the doctrine of equivalents to encompass a "determining step" which does *not* determine if the distribution of the message would violate a predefined security policy, because doing so would render the limitation meaningless. *SciMed*, 242 F.3d at 1346-47; *Lockheed*

*Martin,* 324 F.3d at 1321 ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." (citation omitted)).   As TILLC has essentially acknowledged the Accused Products do not perform a security check, TILLC cannot take the position that *not doing* a security check is the "equivalent" of *doing* a security check.   *SciMed*, 242 F.3d at 1346-47; *see also, Asyst Techs., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("To hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent.").   Accordingly, TILLC cannot establish that the Accused Products meet the "determining step" limitation through the doctrine of equivalents, and Open Text is entitled to summary judgment of non-infringement for the Accused Products.  *PC Connector*, 406 F.3d at 1362.

## V.    Conclusion

For the reasons stated above, Defendants urge the Court to adopt Open Text's construction for the "determining step" and grant summary judgment of non-infringement as to all claims asserted against them in this lawsuit.

Dated:  November 16, 2012           Respectfully submitted,


By:  */s/ Scott Crocker*
     Peter B. King (FBN: 00057800)
     pking@wiandlaw.com
     Katherine C. Donlon (FBN: 066941)
     kdonlon@wiandlaw.com
     Wiand Guerra King P.L
     3000 Bayport Drive, Suite 600
     Tampa, FL 33607
     Tel: (813) 347-5100
     Fax: (813) 347-5198

     Steven Sprinkle, Trial Counsel
     (*Pro Hac Vice*)
     Texas Bar No. 00794962
     Elizabeth J. Brown Fore (*Pro Hac Vice*)
     Texas Bar No. 24001795
     Scott S. Crocker (*Pro Hac Vice*)
     Texas Bar No. 00790532
     Ariyeh Akmal (*Pro Hac Vice*)
     Texas Bar No. 24031581
     Sprinkle IP Law Group, PC
     1301 W. 25th Street, Suite 408
     Austin, Texas 78705
     Tel: (512) 637-9220
     Fax: (512) 371-9088
     ssprinkle@sprinklelaw.com
     ebrownfore@sprinklelaw.com
     scrocker@sprinklelaw.com
     aakmal@sprinklelaw.com

     *COUNSEL FOR DEFENDANTS*
     *NSTEIN TECHNOLOGIES, INC. AND*
     *OPEN TEXT CORPORATION*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/ Scott Crocker*
Scott Crocker