UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**TECHNOLOGY INNOVATIONS, LLC,**

      **Plaintiff,**

**v.**                          **Case No:   2:10-cv-341-FtM-38DNF**

**NSTEIN TECHNOLOGIES, INC. and
OPEN TEXT CORPORATION,**

      **Defendants.**

---

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause is before the Court on the parties' Joint Claim Construction Statement (Doc. 131) filed on May 1, 2013; the Plaintiff, Technology Innovations, LLC's Opening Claim Construction Brief (Doc. 139) filed on June 3, 2013; the Defendants, Open Text Corporation and NStein Technologies, Inc.'s Responsive Claim Construction Brief (Doc. 145) filed on June 25, 2013; and Technology Innovations, LLC's Reply Claim Construction Brief (Doc. 146) filed on July 9, 2013.   Also pertinent to the claim construction issues are Open Text Corporation and NStein Technologies, Inc.'s Motion for Summary Judgment (Doc. 91) filed on November 16, 2012, and Technology Innovation LLC's Response to Motion for Summary Judgment (Doc. 101) filed on December 11, 2012. On September 10, 2013, the Honorable Sheri Poster Chappell, United States District Judge entered an Order (Doc. 150) which referred the issues of claim construction to this Court for the issuance of a Report and Recommendation.

A *Markman*[1] hearing was held on July 22, 2014.   After the *Markman* hearing, the parties filed a Joint Statement Regarding Claim Construction (Doc. 162) on August 1, 2014.   Technology Innovations filed a Rebuttal to Defendants' Argument at the July 22, 2014 Markman Hearing (Doc. 164) on August 13, 2014; Open Text Corporation and NStein Technologies, Inc. filed a Reply to Plaintiff's Rebuttal to Defendants' Arguments at July 22, 2014 Markman Hearing (Doc. 168) on August 25, 2014; and, Technology Innovations filed a Response to Defendants' Reply to Plaintiff's Rebuttal to Defendants' Arguments at the July 22, 2014 Markman Hearing (Doc. 171) on September 5, 2014.

## I.        Background

The Plaintiff, Technology Innovations, LLC ("Technology Innovations") is suing the Defendants, NStein Technologies, Inc. and Open Text Corporation (collectively "Open Text") for patent infringement concerning U.S. Patent No. 6,829,613 (the "'613 patent") issued on December 7, 2004, and entitled "Techniques for Controlling Distribution of Information from a Secure Domain". (Doc. 66, ¶11). Technology Innovations asserts that NStein Technologies, Inc. is a wholly owned subsidiary of Open Text Corporation. (Doc. 66, ¶2).Technology Innovations contends that it is the owner by assignment of all right title and interest in and to the '613 patent. (Doc. 66, ¶11).   For purposes of generally understanding the patent only, the Abstract provides that the patent is a technique for controlling distribution of information from a secure domain by automatically detecting any outgoing message to determine if the message violates a security policy. (Doc. 66-1, Abstract).   This technique is able to determine the content of a message, compare the content of the message to certain message categories, and determine a degree of

---

1 *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*, *aff'd* 517 U.S. 3780 (1996).

similarity of the content between the outgoing message and the message categories. (Doc. 66-1, Abstract). The outgoing message is classified and a determination is made whether the outgoing message may be distributed or would violate a security policy. (Doc. 66-1, Abstract). The overriding dispute in this case is whether the '613 patent includes document retrieval systems, or if it is more limited to security issues and determining whether messages may leave a secure domain.

## II.      Legal Framework for Claims Construction

The court and not the jury has the responsibility to construe or interpret disputed terms in patent claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005)· *citing, Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). The words of the claim are generally given their ordinary and customary meaning. *Phillips v. AWH Corporation*, 415 F.3d at 1312, *See also, Biogen IDEC, Inc. v. Glaxosmithkline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013)(citing *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1334 (Fed. Cir. 2009)).   "We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application."   *Id*. at 1313, *See also, Thorner v. Sony Computer Entertainment Am.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).   How a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin a claim interpretation.   *Id*.   Inventors typically are persons skilled in the field of inventing and the language in the patents is addressed to others who are also skilled in the pertinent field or art.   *Id*.

A person of ordinary skill in the field is deemed to read the terms in the claim in the context of the entire patent including the specification. *Id*. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id* at 1314. Then, general dictionaries may be helpful. *Id*. When the terms of the claim are not readily apparent and have a particular meaning in a field or art, then the Court must look to the intrinsic evidence of the words of the claims themselves, the remainder of the specification, the prosecution history, and then look to the extrinsic evidence of the scientific principles, the meaning of technical terms, and the state of the art. *Id*.

### A.   Claim Language and Specification (Intrinsic Evidence)

The claim itself provides substantial guidance in determining the meaning of the language. *Phillips v. AWH Corporation*, 415 F.3d at 1314. A court should look to the context of the term. *Id*. A court should also review the other claims of the patent to determine the meaning of the language in the claim. *Id*. Claims must also be read in view of the specification. *Id* at 1315-16. A specification may provide a special definition for a claim term that differs from its general meaning, and in such cases the "inventor's lexicography governs." *Id*. at 1316. The language in the specification, however does not "'import limitations from the specification into the claims.'" *Varco, L.P. v. Pason Systems USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006), (quoting *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005)). Claims may not be broader in scope than the invention that is set forth in the specification. *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006). It is necessary to consider the specification as a whole and to read all of the portions of the written description so that the

patent as a whole is internally consistent.  *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005).

A claim term may be more narrowly construed than it ordinary meaning in two instances: "1) when a patentee sets out a definition and acts as [its] own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." (internal quotation marks omitted) *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) (quoting *Thorner v. Sony Computer Entertainment Am. L.L.C.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).  A patentee acts as its own lexicographer when the patentee sets forth a definition of a disputed claim term giving it "other than its plain and ordinary meaning." (internal quotation marks omitted) *Id.* (citing *Thorner v. Sony Computer Entertainment Am. L.L.C.*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)(quoting *CCS Fitness, Inc. v. Brunswick Corp*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "Similarly, to disavow claim scope, '[t]he patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of the claim scope.'" *Id.* citing *Thorner*, 669 F.3d at 1366 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1325 (Fed. Cir. 2002)).

It is generally impermissible to limit a claim to a preferred embodiment or to any inferences drawn from the description of the preferred embodiment.  *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001).   Even if the specification describes a very specific embodiment, the claims are not confined to the embodiment described.  *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1377 (Fed. Cir. 2006). "In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that

embodiment." *Id.*, (citing *Gemstar-TV Guide v. Int'l Trade Comm'n*, 383 F.3d 1352, 1366 (Fed. Cir. 2004)), *See also*, *Kapusta v. Gale Corp.*, 155 F. App'x 518 (Fed. Cir. 2005).

"To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips v. AWH Corporation*, 415 F.3d at 1323. Although the task to determine if the preferred embodiment is the outer limit of the claim or merely an example of the invention may be difficult, the Federal Circuit has found that "attempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language from the specification." *Id.* "Nonetheless, absent a clear disclaimer in the specification, the embodiments in the specification do not limit broader claim language." *Eolas Technologies Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005)(citing *Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 807-08 (Fed. Cir. 2004)). Even if the only embodiment or all of the embodiments contain a certain limitation, a court cannot read this limitation into the claim. *Thorner v. Sony Computer Entertainment Amer. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012).

**B. Prosecution History (Intrinsic Evidence)**

The prosecution history which is the complete record of the proceedings before the Patent and Trademark Office is considered part of the "intrinsic evidence" for claim construction purposes. *Phillips v. AWH Corporation*, 415 F.3d at 1317. The prosecution history shows how the inventor and the Patent and Trademark Office understood the patent. *Id.* The prosecution history is generally less useful than the specification because it is the ongoing negotiations of the applicant and the Patent and Trademark Office and lacks the clarity of the specification. *Id.*

"Disclaimers based on disavowing actions or statements during prosecution, however, must be both clear and unmistakable." *Sorensen v. International Trade Commission*, 427 F.3d 1375, 1379-80 (Fed. Cir. 2005), (citing *Omega Eng'g. Inc. v. Raytek Corp.,* 334 F.3d 1314, 1326 (Fed. Cir. 2003)).   Further, it is the applicant and not the examiner who must "'give up or disclaim subject matter'" that would otherwise be included within the scope of the claim.   *Sorensen*, 427 F.3d at 1380, (quoting *Innova/Pure Water, Inc.,* 381 F.3d at 1124).   The statement of an examiner alone will not necessarily limit a claim. *Bell Atlantic Network Services, Inc. v. Covad Commc'ns Group, Inc.* 262 F.3d 1258, 1273 (Fed. Cir. 2001).

## C.   Dictionaries, Treatises (Extrinsic Evidence)

Extrinsic evidence is less significant and less reliable than intrinsic evidence.   *Phillips v. AWH Corporation*, 415 F.3d at 1317, 1318.   Dictionaries and treatises, especially technical dictionaries, may be helpful and technical dictionaries may help the court with technical terms. *Id*. at 1318.

## III.   Claim Construction of Disputed Claims

There are four disputed claims, two independent and two dependent claims at issue in this case.   As set forth in the '613 patent, they are:

## A.   The 2 Independent Claims at Issue

1. A computer-implement method of controlling distribution of a message from a sender to a recipient, the method comprising:
      constructing semantic models for a plurality of message categories;
      constructing a semantic model for the message;
      comparing the semantic model of the message with the semantic models for the plurality of message categories;
      classifying the message based on the comparison; and
      determining if the message can be distributed to the recipient based on the classification of the message.

(Doc. 66-1, 17:5-17[2])

---

2 The Court will refer to the terms in the patent by the column number and then the line number.

23.   A computer program product for controlling distribution of a message from a sender to a recipient, the computer program product comprising:

> code for constructing semantic models for a plurality of message categories;
> code for constructing a semantic model for the message;
> code for comparing the semantic model of the message with the semantic models for the plurality of message categories;
> code for classifying the message based on the comparison;
> code for determining if the message can be distributed to the recipient based on the classification of the message;
> and
> a computer-readable medium for storing the codes.

(Doc. 66-1, 19: 21-36)

### B.   The 2 Dependent Claims at Issue

19.   The method of claim 1 wherein determining if the message can be routed to the recipient comprises:

> providing a security policy;
> determining if the message violates the security policy based on the classification of the message; and
> permitting distribution of the message to the recipient if the security policy is not violated.

(Doc. 66-1, 18:55-62)

41.   The computer program product of claim 23 wherein the code for determining if the message can be routed to the recipient comprises:

> code for providing a security policy;
> code for determining if the message violates the security policy based on the classification of the message; and
> code for permitting distribution of the message to the recipient if the security policy is not violated.

(Doc. 66-1, 21:18-25).

All of the terms to be construed in the two independent claims are identical, just as the one term to be construed in the dependent claims is identical.   Therefore, the Court will construe the same terms in the same manner for the independent claims and likewise for the dependent claims.

## C.   Agreed Claim Construction Terms

The 2 terms that the parties have **agreed upon** are:

"computer-implement" can be construed as "computer-implemented"

"routed" can be construed as "distributed"

(Doc. 131, Exh. A). Other terms or words were agreed upon after the initial Joint Claim Construction Statement (Doc. 131) was filed, and these agreed upon terms will be set forth below as they relate to each disputed term.

## IV.     Disputed Claim Construction Terms[3]

| No. | Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|-----|------|-----------------------------------|-----------------------------------|
| 1. | controlling distribution of a message from a sender to a recipient | No construction of entire phrase necessary after "distribution", "message", "sender", and "recipient" are construed. | Controlling the delivery of a MESSAGE at a boundary of a secure domain by determining whether delivery of the MESSAGE violates a security policy. |
| 2. | distribution | Electronic transmission or Electronic delivery. | See No. 1. |
| 3. | message | An electronic item that holds information and is capable of being transmitted electronically, which can have a variety of different forms, including, for example, a document, a web page, or an email message. | An electronic communication created by a SENDER for a specified RECIPIENT outside the secure domain, which includes (1) text and (2) meta-information about the specified RECIPIENT. A MESSAGE originates in a secure domain and is intended for a destination outside a secure domain. |
| 4. | sender | A source of a message being transmitted. | A person who is a member of a secure domain who sends a MESSAGE to a specified RECIPIENT |

---

[3] The disputed claim construction terms and proposed constructions were originally set forth in Exh. B to Doc. 131-2, the Joint Claim Construction Statement (Doc. 131), however, after the *Markman* hearing, the parties submitted Exhibit A to the Joint Statement Regarding Claim Constructions (Doc. 162-1) on August 1, 2014. The Court will refer to the August 1, 2014 submission (Doc. 162-1).

| 5. | recipient | A destination or prospective target for a message being transmitted. | A person who is not a member of the secure domain and is specified by the SENDER to receive the MESSAGE. |
|---|---|---|---|
| 6. | semantic model | A semantic representation of a message or message category that includes text other than words contained in the message or the message category. | A set of structured knowledge representations which consist of concepts and relations that represent the meaning expressed by the MESSAGE/MESSAGE CATEGORY. |
| 7. | message categories | Categories to which messages can be classified as belonging. | Categories to which messages can be classified as belonging, where each category (1) is associated with descriptive text, and (2) has an associated security clearance level independent of SENDER or RECIPIENT. |
| 8. | constructing semantic models for a plurality of message categories | No construction required. In the alternative, the term should be construed as "making or forming semantic models for a plurality of message categories by combining or arranging parts or elements." | Extracting the meaning of each MESSAGE CATEGORY from the descriptive text associated with each MESSAGE CATEGORY by: (1) using natural language processing and retrieving text segments (different than the words of the text) that relate to the meaning of the text; and then (2) extracting concepts and relations from the retrieved text segments to represent the meaning of the text segments. |
| 9. | constructing a semantic model for the message | No construction required. In the alternative, the term should be construed as "making or forming a semantic model for the message by combining or arranging parts or elements." | Extracting the meaning of the MESSAGE by extracting concepts and relations from the meta-information of the MESSAGE to represent the meaning of the MESSAGE. The construction of the SEMANTIC MODEL of the MESSAGE triggers performance of the compare, classify and determine steps. |
| 10. | comparing the semantic model of the message with the semantic models for the plurality of message categories | No construction required. In the alternative, the term should be construed as "examining for similarities the semantic model of the message and the semantic models for the plurality of message categories." | Determining a degree of similarity between the SEMANTIC MODEL for the MESSAGE and each previously constructed SEMANTIC MODEL for the multiple MESSAGE CATEGORIES. |

| 11. | classifying the message based on the comparison | Identifying to which message category, if any, a message belongs, using the comparison of semantic models (directly or indirectly). | After the comparison, identifying the MESSAGE as belonging to each MESSAGE CATEGORY for which the degree of similarity satisfies a preset threshold for that MESSAGE CATEGORY. |
| --- | --- | --- | --- |
| 12. | determining if the message can be distributed to the recipient based on the classification of the message | Determining if the message is capable of being distributed to the recipient based at least in part on the classification of the message. | After the classification, determining if the distribution of the MESSAGE to the RECIPIENT would violate any security policy for the secure domain using the security clearance level of the MESSAGE CATEGORIES associated with the MESSAGE as a result of the classification. |
| 13. | permitting distribution of the message to the recipient if the security policy is not violated. | No construction required. In the alternative, "permitting" means "allowing". | If it is determined that a security policy is not violated, forwarding the MESSAGE to the RECIPIENT. |

## V.      Overview of Patent

Before construing the actual terms in dispute, the Court will review the entire patent as a whole. The location of a statement in a patent "can signal the likelihood that the statement will support a limiting definition of a claim term."   *C.R. Bard Inc. v U.S. Surgical Corp*, 388 F.3d 858, 864 (Fed. Cir. 2004). To determine the scope of the patent, "[s]tatements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term."   *Id.* (citing *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998) ("relying on global comments made to distinguish the applicants' claimed invention from the prior art during the prosecution of the patent in construing a claim term.") (internal quotation marks omitted)).   The Summary of the Invention and the Abstract sections of the specification normally describe the patent as a whole, and are generally not limited to describing a preferred embodiment, but rather describe the patent and the

overall invention more broadly. *Id.* (quoting *Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F. 3d 1340, 1348 (Fed. Cir. 2004). "Accordingly, other things being equal, certain sections of the specification are more likely to contain statements that support a limiting definition of a claim term than other sections, although what import to give language from the specification must, of course, be determined on a case-by-case basis. *Id.*

In addition, when a patent describes the "present invention" as a whole, then this description "limits the scope of the invention." *Verizon Serv. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).   Further, when construing a claim, the problem that the inventor is attempting to solve as found in the specification and prosecution history is also relevant to construing the terms of the patent.   *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997).

Technology Innovations asserts that Open Text improperly imports the terms "boundary," "secure" or "security" into independent claims 1 and 23.   Open Text argues that in the Abstract, Summary of Invention, and description of the "present invention" the '613 patent is limited to electronic messages leaving a secure domain.   The Court recognizes that claims 1 and 23 do not contain the terms "secure", "security" or "boundary". However, the Court notes that the title of the patent is "Techniques for Controlling Distribution of Information From a Secure Domain." (Doc. 66-1). In the Abstract, the first sentence is as follows: "[t]echniques for controlling distribution of information from a secure domain by automatically detecting outgoing messages which violate security policies corresponding to the secure domain." (Doc. 66-1, Abstract). The Abstract then describes constructing semantic models for message categories for the outgoing message and comparing them to semantic models of message categories to determine the "degree of similarity between the semantic models." (Doc. 66-1, Abstract).   The outgoing message is classified based

on the degree of similarity obtained from the comparison. (Doc. 66-1, Abstract).   Based on the classification of the outgoing message, a determination is made if distribution of the outgoing message would violate a security policy for the secure domain. (Doc 66-1, Abstract).   Distribution of the outgoing message "is allowed if no security policy is violated."   (Doc. 66-1, Abstract). Clearly, the Abstract contains the terms "secure" and "security" repeatedly.

The Summary of the Invention also contains the limiting language of "secure." "The present invention describes a system, method, and computer program for controlling distribution of a message from a secure domain to a destination outside the secure domain." (Doc. 66-1, 2:54-57).   Later, the patent provides that "the present invention is a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain by automatically detecting outgoing messages which violate security policies corresponding to that security domain." (Doc. 66-1, 4:21-25). Again referring to "boundary," "secure" and "security."

The language in the Abstract, Summary of Invention, and "present invention" all provide that this patent is for technology which controls the distribution of information from the boundary of a secure domain using the content of the message and comparing it to message categories to determine the similarity of the outgoing message with the message categories, and then making a determination based on the degree of similarity as to whether the outgoing message will violate a security policy. With this construction in mind, the Court will construe the terms of the patent in dispute.

VI.    **Claim Differentiation**

Technology Innovations asserts a number of Open Text's constructions of disputed terms violates the claims differentiation doctrine   The doctrine of claim differentiation provides that normally limitations "stated in dependent claims are not to be read into the independent claim from

which they depend.'" *Innoa/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1123 (Fed. Cir. 2004)(citation omitted). Each claim in a patent is presumed to have a different meaning and scope. *Bristol-Myers Squibb Company v. Andrx Pharmaceuticals, Inc.*, 343 F. Supp. 2d 1124, 1142 (S. D. Fla. 2004). "'To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.'" *Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007)(citing *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

Technology Innovations argues repeatedly that the terms "boundary," "secure" and "security" do not appear in independent claims 1 and 23, but do appear in the dependent claims, including claims 19 and 41.   Technology Innovations argues that by using the terms "boundary", "secure" and "security" the dependent claims become superfluous or redundant of the independent claims.   As the Court determined above, the terms "boundary," "secure" and "security" appear throughout the patent beginning in the title of the patent, and through the Abstract, Summary of Invention, the "present invention", and the specification. The Court finds that Open Text has not violated the claim differentiation doctrine by including the terms "boundary," "secure" and "security" in its claims construction.   Further, the Court determines that Open Text did use certain terms in its claims construction that also appear in the dependent claims, however, none of the terms used by Open Text rendered an entire dependent claim redundant or superfluous.

## VII.    Prior Art

The parties agree that the prior Patent No. 5,168,565 ("Morita patent") is a patent of a document retrieval system and was patented prior to the '613 patent. (Tr.[4] p. 78, 101).

---

[4] "Tr." refers to the Transcript (Doc. 160) of the hearing held on July 22, 2014.

Technology Innovation also filed another patent a '518 application as a continuation of the '613 patent. (Tr. p. 103). The language of claim 1 in the '613 and the original '518 patent were identical. (Tr. p. 103). The original '518 patent was rejected based upon the Morita patent, and the entire patent was later abandoned. (Tr. p. 103, 111).

In the May 29, 2008 Response to the Office Action for the '518 patent, Technology Innovations states, "Morita has nothing whatsoever to do with receiving a message intended for distribution to a recipient outside a secure domain, classifying that message and determining whether the message might violate a security policy." (Tr. p. 105, Exh. 7 to Doc. 139-9, p.6). The inventor did not mention the Morita patent as prior art for the '613 patent, and the patentee has a duty to disclose prior art in the application. (Tr. p. 108). The doctrine of inequitable conduct provides that if an applicant for a patent misrepresents or omits material information, such as prior art, with the "specific intent to deceive" the Patent and Trademark Office, then the remedy is for the court to render the patent unenforceable. *Therasense, Inc. v Becton, Dickinson & Co.,* 649 F.3d 1276, 1287 (Fed. Cir. 2011) and *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1284 (S.D. Fla. 2007). In the instant case, by its own omission of the Morita patent in the '613 patent application, Technology Innovations determined that the prior Morita patent for a document retrieval system was not prior art for the '613 patent.

## VIII.   Claim Construction of Disputed Claims

### A.   Controlling Distribution (Disputed terms 1 and 2)

Claim 1[5] provides in part that the claim is: "A computer-implement[ed] method of controlling distribution of a message from a sender to a recipient." (Doc. 66-1, 17:4-17). The parties initially disagreed as to the term "controlling", however, Technology Innovations now has

---

[5] As stated above, claims 1 and 23 contain the same disputed claim construction terms, and the Court's construction of the terms applies equally to both claims.

agreed with Open Text to use the term "controlling" in its claim construction.   The parties disagree as to the term "distribution" with Technology Innovations asserting that "distribution" means controlling an "electronic transmission or electronic delivery" whereas Open Text asserts that it means controlling the delivery of a message "at a boundary of a secure domain by determining whether delivery of the message violates a security policy." (Doc. 139, p. 11-12, Doc. 145, p. 12). Technology Innovations objects to Open Text's additional language as to the boundary of a secure domain and violation of a security policy.   Technology Innovations argues that claim 1 does not contain the terms "secure" or "security" and that Open Text is importing limitations from the specification.

Technology Innovation cites to the preamble for claim 1 which uses the terms "computer-implement method of controlling distribution of a message." (Doc. 66-1, 17:5-6). Technology Innovations asserts that "distribution" refers to an action performed on something electronic such as an electronic communication.   Therefore, Technology Innovation contends that "distribution" means "electronic transmission" or "electronic delivery." (Doc. 139, p. 13). Technology Innovations cites to the Background of the Invention where the word "distributed" is synonymous with the term "communicated."   "With the widespread use of computers, an expanding telecommunication network, and the rising popularity of the Internet, an increasing amount of information is now being stored and communicated/distributed in electronic form for both person and business purposes." (Doc. 66-1, 1:49-53).   Technology Innovations further cites to the Background of the Invention to construe how information is communicated by using the word "transmitted" in the following sentence:

> In particular, communication techniques such as electronic mail (E-Mail), electronic faxes and the like, have made the networks of these organizations susceptible to information leakage problems whereby sensitive information is

transmitted to unauthorized users by process/entities with legitimate access to the information."

(Doc. 139, p. 14, Doc. 66-1, 1: 58-63).   Technology Innovations also refers to the Morita patent which is a patent of a document retrieval system, and the Morita patent provides that distribution means electronic transmission.   (Doc. 139, p. 18).

Open Text cites to the language in the patent.   Specifically, Open Text cites to the Summary of the Invention which provides that "controlling distribution" means controlling the distribution of a message from a secure domain to a destination outside the secure domain. (Doc. 66-1, 2:54-57).   Open Text then cites to language of the "present invention" which provides that the "present invention is a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain by automatically detecting outgoing messages which violate security policies corresponding to that security domain."   (Doc. 66-1, 4:21-25). Open Text then cites to language in the Abstract which states that the patent is a technique for controlling distribution of "information from a secure domain" by detecting outgoing messages which violate a security policies.   (Doc. 66-1, Abstract). Statements from the Abstract, Summary of Invention, and language of the present invention are not embodiments and define the scope of the invention in this case.   *See, C.R. Bard Inc. v U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004), *Verizon Services Corp. v. Vonage Holdings Corp*., 503 F.3d 1295, 1308 (Fed. Cir. 2007).

Technology Innovations mainly cites to the actual language of the preamble to claim 1 and to the Background of the Invention.   To understand the claims, the Court must determine the meaning of the claims.   Using the same language as in the preamble does not construe the meaning

of the terms. Further, the language in the Background of the Invention is not persuasive as it is not referring to the patent at issue.

The Abstract, Summary of the Invention and the present invention all describe a technique which controls the distribution of a message at a boundary of a secure domain.   For the term "controlling distribution" to have meaning, it must indicate where and how a message's distribution will be controlled.   To answer the question of where, the present invention defines it as at the boundary of a secure domain, and to answer the question of how, the Abstract and the language of the present invention state that it is done by "automatically detecting outgoing messages which violate security policies." (Doc. 66-1, Abstract, 4:21-25). Therefore, the Court construes "controlling distribution" as "[c]ontrolling the delivery of a MESSAGE at a boundary of a secure domain by determining whether delivery of the MESSAGE violates a predefined security policy."

### B.   Message (Disputed Term 3)[6]

Technology Innovations asserts that the term "message" is an electronic item that holds information and is capable of being transmitted. (Doc. 162-1). Technology Innovation asserts the term "message" and the term "information" are interchangeable, citing to the Background of the Invention. (Doc. 66-1, 1:40-45). The Background of the Invention provides that the present invention relates "to the field of computer data security and content-based filtering of information."   (Doc. 66-1, 1:40-43). Technology Innovations also contends that in the Description of the Specific Embodiments section, the patent provides that Figure 3 depicts a flowchart "for controlling the distribution of information from a secure domain, according to an embodiment of the present invention" and later provides that "[t]he task of controlling [the] flow of information

---

6 Technology Innovations had the term "stored" in their original construction of the term "message" however, at the *Markman* hearing, it agreed to remove the term "stored".   (Tr. p. 32).

from a secure domain typically involves classifying the information carrying message into one or more categories based on the content of the message . . ." (Doc. 66-1, 5:47-50, 59-64). Technology Innovations cites to these three places within the patent to show that the terms "message" and "information" are used interchangeably, and should be defined as an electronic item that holds information." (Tr. p. 33).   Technology Innovations also cites to the Microsoft Computer Dictionary which defines "message" as a "unit of information transmitted electronically from one device to another."   (Tr. p. 33).   Technology Innovations asserts that its definition comes directly from the patent where it states, "[t]he outgoing message may have various different forms such as an e-mail message with or without attachments, newswire text, web pages, HTML documents, *et cetera.*" (Doc. 66-1, 7:57-60, Tr. p. 34).

Technology Innovations also cites to patent '088 and the Message Understanding Conferences ("MUCs") that were held in the years 1987 through 1993.   (See, Doc. 139, p. 18). The Abstract of the '088 patent describes its invention as an "information extraction system that allows users to ask questions about documents in a database, and responds to queries by returning possibly relevant information which is extracted from the documents."   (Doc. 139-4, p. 2 Abstract). The MUCs' goal was to "automatically extract information from news texts to populate structured databases." (Doc. 139-4, 2:46-48). Technology Innovations cites to the language in the Background of the Invention in the '088 patent stating "[f]or example, a terrorist organization, "Shining Path" is identified as the perpetrator in a message which has been categorized as a terrorist story within the 'atomic' framework of information extraction." (Doc. 139-4, 3:1-4). Technology Innovations asserts that the term "message" is more than an electronic communication because in the '088 patent and MUCs, the term was used to refer to a newspaper article.

Open Text asserts that a message is an "electronic communication" and not simply an electronic item.  (Tr. p. 128).  In the Background of the Invention of the '613 patent, the patent provides that "[w]ith widespread use of computers, an expanding telecommunication network, and the rising popularity of the Internet, an increasing amount of information is now being stored and communicated/distributed in electronic form for both personal and business purposes."  (Doc. 66-1, 1:49-53).  Open Text asserts that the information at issue is not only stored but also communicated or distributed. Open Text argues that the Background of the Invention also provides that in the past, security personnel would manually "monitor the contents of information carrying messages which originate in a secure domain and whose destination lies outside the secure domain or of messages whose sender is a member of a secure domain but whose recipient is not a member of the secure domain" showing that the invention involves information that is communicated. (Doc. 66-1, 2:8-13). The Background of the Invention provides examples of information which includes "communication techniques such as electronic mail (E-Mail), electronic faxes, and the like . . ." (Doc. 66-1, 1:58-60).   Open Text contends that a message is an electronic communication that originates within a secure domain and is being sent to a destination outside the secure domain, and not an electronic item that holds information, but may not be communicated.

The Court determines that the term "message" is an electronic communication.  The Background of the Invention discusses the rising popularity of communication in electronic form and the increased connectivity of the "free flow of information" and how this increased flow of information is causing security problems.  (Doc. 66-1, 1:49-58).  The Background of the Invention clearly provides that prior to this invention, security personnel would monitor outgoing communications from the secure domain that were traveling outside of the secure domain, and provides examples such as e-mails and electronic faxes. In addition, as stated by Technology

Innovations, the Morita patent involved a "document retrieval system for retrieving registered documents from a document database. Morita has nothing whatsoever to do with receiving a message intended for distribution to a recipient outside of a secure domain, classifying that message and determining whether the message might violate a security policy." (Doc. 139-9, p. 5, Response to Office Action). The '613 patent was differentiated from the Morita patent because it involved messages that are distributed and not just documents. (Tr. p. 131). The Court reviewed the language in the '088 patent and the MUCs and is not persuaded that the term "message" in those documents actually defined the term for the '613 patent. The language in the entire '613 patent provides a construction for the term "message" and the Court finds that the term "message" is an electronic communication.

Open Text argues that Technology Innovations construes "message" to mean an open-ended list of electronic items such as an e-mail, documents, etc. Technology Innovations asserts that there is no need to include in the definition of a "message" that it must include text and meta-information about the specified recipient. Technology Innovations cites to the language in the patent that "[t]he outgoing message may have various different forms such as an E-mail message with or without attachments, newswire text, web pages, HTML documents, etc." (Doc. 66-1, 7:57-60).

Open Text asserts that a message must include both text and meta-information. Directly below the sentence cited by Technology Innovations is the following:

> [a]s shown in FIG. 5, the present invention parses the outgoing message to extract meta-information (or function fields) from the outgoing message (step 86). For example, meta information for an Email message may include message sender information, message recipient information (information about a direct recipient or a "carbon-copy" recipient), sender's classification level information, a recipient's classification level information, time stamp information for the message, text information for the message, etc.

(Doc. 66-1, 7:61-67, 8:1-2). Open Text argues that the meta-information is necessary to determine where the message is to be delivered, and information about the sender and recipient to determine the level of security clearance for both to be able to compare them, to determine if the message may be delivered. The invention provides that a "[m]eta-information interpreter receives an outgoing message and parses the message into functional fields" (Doc. 66-1, 11:67, 12:1-2).   The Summary of the Invention provides that "[t]he present invention may determine a security clearance level for the sender of the message, the recipient, and for the message category to which the message was classified."   (Doc. 66-1, 3:13-16). Open Text also cites to the language in the patent that "[t]he meta-information may vary for different types of out-going message or may even vary within the same type of outgoing messages.   The content of the meta-information or the functional fields are then processed by a knowledge extraction system, such as the KNOW-IT system, to extract knowledge representations for the outgoing message (step 88)."   (Doc. 66-1, 8:3-9).

The Court determines that the term "message" must include text and meta-information. The invention involves an electronic communication that contains both text and meta-information. The meta-information is used by a system such as KNOW-IT to determine information about the security levels of the sender, recipient, and to extract knowledge representations for the outgoing message.   If the message did not contain both the text and meta-information, then the invention, at a minimum, would be unable to determine the security levels of the recipient.   Therefore, the Court determines that the term "message" contains both text and meta-information.

Technology Innovations objects to Open Text including the language "by a SENDER for a specified RECIPEINT outside the secure domain" arguing that every message does not always have a pre-determined sender and recipient.   Open Text argues that its definition which uses the

terms "sender" and "recipient" further describes who the electronic communication is from and to whom it is going.   In the Summary of Invention, the invention provides that it controls an electronic communication sent from a sender inside a secure domain to a recipient outside of the secure domain.     (Doc. 66-1, 2:54-57).   The Court determines that the term "message" must have a sender and recipient, and the sender must be attempting to send the electronic communication outside of the secure domain. The term "secure domain" is consistent with this Court's construction of the terms "controlling distribution" to mean "controlling the delivery of a message at a boundary of a secure domain."   Therefore, the Court determines that the term "message" is construed as "[a]n electronic communication created by a SENDER for a specified RECIPIENT outside the secure domain, which includes (1) text and (2) meta-information about the specified RECIPEINT.   A MESSAGE originates in a secure domain and is intended for a destination outside a secure domain."

### C.   Sender (Disputed Term 4) and Recipient (Disputed Term 5)

Technology Innovations construes the term "sender" as "a source of a message being transmitted" and the term "recipient" as "[a] destination or prospective target for a message being transmitted." Whereas Open Text construes the term "sender" as "[a] person who is a member of a secure domain who sends a MESSAGE to a specified RECIPIENT," and the term "recipient" as "[a] person who is not a member of the secure domain and is specified by the SENDER to receive the MESSAGE." (Doc. 162-1). Technology Innovations argues that the phrase "member of a secure domain" is too limited, and the sender does not have to be a member of a secure domain. Open Text asserts that the invention concerns people who send a message from a secure domain to recipients who are not members of the secure domain.   The Background of the Invention provides that prior art employed a security person to monitor messages from a secure domain

traveling outside the secure domain, and the Summary of the Invention provides that the present invention controls the distribution "of a message from a secure domain to a destination outside the secure domain." (Doc. 66-1, 2:12-14, 2:54-57).   The Court determines that the term "sender" encompasses being within a secure domain, and the term "recipient" encompasses being outside of the secure domain.

Technology Innovations argues that the terms "sender" or "recipient" should not be limited to a person. (Tr. p. 40).   Technology Innovations argues that in the '518 application, the examiner referred to a keyboard as a sender and the recipient as a server, and therefore, a sender and recipient should not be limited to a person.   (Tr. p. 41-42). Open Text asserts that the only time in the patent that the terms "sender" and "recipient" are described, they are described as people, such as in an example of a newsgroup application.   "[T]he people who submit messages to the newsgroup can be considered as belonging to one secure domain . . ." (Doc. 66-1, 4:31-34). Open Text also argues that the present invention uses natural language processing, which can only refer to the human language, and not a computer language. The patent provides, "[t]his is accomplished using natural language processing and information retrieval techniques and knowledge-base technologies which enable the present invention to understand and synthesize rich, conceptual-level representations of the meaning of the message categories and the outgoing messages."   (Doc. 66-1, 14:39-44). The Court determines that the use of the term "natural language" requires that the term "sender" and the term "recipient" be people and not a keyboard and server.   Therefore, the Court will construe the term "sender" to be "[a] person who is a member of a secure domain who sends a MESSAGE to a specified RECIPIENT" and the term "recipient" to be "[a] person who is not a member of the secure domain and is specified by the SENDER to receive the MESSAGE."

### D.   Semantic Model (Disputed Term 6)

Technology Innovations asserts that the term "semantic model" is "[a] semantic representation of a message or message category that includes text other than words contained in the message or the message category." (Doc. 162-1).  Technology Innovations asserts that the term "semantic model" and "semantic representation" are used interchangeably throughout the patent citing to the Summary of the Invention: "a machine learning module which compares the semantic representations of the manually classified message and the message category to which the message was manually classified.  The semantic model of the message category may be updated based on the comparison."  (Doc. 66-1, 3:38-33-37).  Technology Innovations also included the terms "text other than words contained in the message or the message category" to differentiate the present invention from the prior art of comparing "dirty" words or a simple key word matching invention.

Open Text asserts that a "model" is a "set of knowledge representations." Open Text refers to the specification which states that "the present invention is a modular meaning-based domain boundary controller which understands the semantic content of security classification guides, message categories, and outgoing messages.   The present invention constructs semantic knowledge representations for a plurality of message categories and for outgoing messages and compares the semantic representations at the level of conceptual content."   (Doc. 66-1, 14:32-39). In addition, the Guard-It proposal which was attached as an exhibit to the '613 patent and incorporated into the '613 patent, provides that "[t]he capacity is new, since it involves a unique combination of natural language processing and information retrieval techniques to convert succinct security classification topics into rich knowledge representations."   (Doc. 145-4, Guard-It p. 2). Open Text argues that these semantic models allow the invention to monitor messages

based on the meaning of the content of the message.   The Court determines that "structured knowledge representations" comprise a "model."

Open Text contends that to obtain the meaning of a message, a semantic model must include a set of structured knowledge representations, which are concepts and relations that have been taken from the text associated with the message category or the message. The '613 patent provides:

> A knowledge extraction system then extracts rich structured knowledge representations from the text segments retrieved in step 80 (step 82). An example of a knowledge 30 extraction system is the "KNOW-IT" system, developed by Textwise LLC of Syracuse. The KNOW-IT system accepts text as input and extracts semantic relations between the concepts expressed in the texts. These concepts and relations provide a representation of the meaning expressed by the texts. The concepts and relations are represented as "concept-relation-concept" triples (or CRCs), or "relation-concept" tuples (or RCs). The CRCs and RCs encapsulate a generalized representation of the structure and meaning of each text segment. The set of CRCs and RCs extracted from the text segments constitute a semantic model of the structured meaning of the corresponding message category. For further information on the use CRCs and RCs please refer to U.S. patent application Ser. No. 08/795,658 filed Feb. 6, 1997 which issued as U.S. Pat. No. 6,076,088, and U.S. patent application Ser. No. 09/280,228 filed Mar. 29, 1999, the entire disclosures of which are herein incorporated by reference for all purposes. The knowledge representations assigned to the text segments constitute a semantic releasability model for the corresponding message category.

(Doc. 66-1, 7:28-50). The '613 patent further provides that "[k]nowledge extraction system 120 converts the text segments into a knowledge representation which specified the conceptual meaning of the message category and constitutes the semantic model for the message category." (Doc. 66-1, 11: 49-52).

Upon review of the patent, the Court determines that the semantic model is a set of structured knowledge representations which consist of concepts and relations.   The present invention contains references to the knowledge representations, and extracts semantic relations between the concepts expressed in the texts. Both the concepts and relations are crucial to

determining the meaning of the content of the message and message categories.   Therefore, the Court will construe the term "semantic model" to be "a set of structured knowledge representations which consist of concepts and relations that represent the meaning expressed by the MESSAGE/MESSAGE CATEGORY."

### E.   Message Categories (Disputed Term 7)

The parties agree that the term "message categories" means "categories to which messages can be classified as belonging." (Tr. p. 49, 148).   Open Text continues with its construction adding "where each category (1) is associated with descriptive text, and (2) has an associated security clearance level independent of SENDER or RECIPIENT." (Doc. 162-1). Technology Innovations argues that this additional language imports improper limitations from a specific embodiment.

Technology Innovations asserts that claim 1 fails to mention the term "security" and this term should not be a part of the construction of the term "message category."   The Court determined above that the term "security" is not improper limitation. Further, the specification provides that a message category has an associated security clearance level.  (See, Doc. 66-1, 12:50-60 ("[t]he outgoing message classification information is then passed to security checker"); 13:19-20 ("security clearance levels of the message category and the message"); Abstract, ("the outgoing message is classified based on the degree of similarity obtained from the comparison. A determination is made, based on the classification of the outgoing message, if distribution of the outgoing message would violate a security policy for the secure domain").   The Court finds that the construction of "message categories" properly includes the term "security."

Technology Innovations argues that the term "is associated with descriptive text" adds an unnecessary and extraneous requirement.   Open Text cites to the specification which it argues have consistently described a message category as having descriptive text or a topic statement

associated with it, and without the descriptive text, the invention would be unable to create a semantic model which would represent the meaning of the message category.   The specification provides "the present invention receives textual description (or topic statements) corresponding to the message category for which a semantic model is to be built" (Doc. 66-1, 6:34-36); "[t]he message category description or topic statements are then parsed into their concepts" (Doc. 66-1, 6:53-54); "[d]uring the first stage, the present invention uses natural language processing and information retrieval techniques to generate a set of text segments that are closely related to the meaning of the message category as described by the message category descriptive text provided by the user" (Doc. 66-1, 6:20-24); "expand the representation of the message category description" (Doc. 66-1, 7:22-23); and, "[a]s described above, according to the teachings of the present invention, message categories along with their descriptive information . . . The message category information, which includes message category identification information, and message category descriptive information . . ." (Doc10:54-61). After review of the entire patent, the Court determines that a message category must be associated with a descriptive text for the invention to create a semantic model which would represent the meaning of the message category.

Open Text argues that the security clearance level of the message category must be independent of the sender and recipient.   (See, 9:65-67 – 10:1-3) ("the security clearance level of the message category corresponding to the message classification and compare it with the security clearance levels of the outgoing message's sender and recipients."). Pursuant to the patent, the Court agrees that the security level of the message category, sender, and recipient are separate and distinct.   After review of the patent, the Court will construe the terms "message categories" to mean "categories to which messages can be classified as belonging, where each category (1) is

associated with descriptive text, and (2) has an associated security clearance level independent of SENDER or RECIPIENT."

### F.   Constructing Semantic Models for a Plurality of Message Categories (Disputed Term 8).

Technology Innovations asserts that the phrase, "constructing semantic models for a plurality of message categories" does not need to be construed once the terms "semantic model" and "message category" have been construed, but if any term does need construction, that term would be "constructing" which Technology Innovations would construe as "making or forming." Open Text asserts this phrase should be construed as follows:   "[e]xtracting the meaning of each MESSAGE CATEGORY from the descriptive text associated with each MESSAGE CATEGORY by: (1) using natural language processing and retrieving text segments (different than the words of the text) that relate to the meaning of the text; and then (2) extracting concepts and relations from the retrieved text segments to represent the meaning of the text segments." (Doc 162-1).

Open Text asserts that constructing semantic models is a difficult process and the phrase needs to be construed for understanding. (Tr. p. 150-51). Open Text contends that over half of the specification is directed at how to construct a semantic model. (Tr. p. 150). Open Text's construction has two steps: first, using natural language processing; and second, extracting concepts and relations.   (Tr. p. 154). Open Text refers to the patent "[b]roadly, the step of constructing a semantic model for a message category may be accomplished in two stages. During the first stage, the present invention uses natural language processing and information retrieval techniques to generate a set of text segments that are closely related to the meaning of the message category. . . During the second stage, the present invention extracts structured knowledge representation for the message category from the set of text segments retrieved in stage one." (Doc.

66-1, 6:15-34).  As to the second stage, a "knowledge extraction system then extracts rich structured knowledge representations from the text segments retrieved in step 80 (step 82). . . . The KNOW-IT system accepts text as input and extracts semantic relations between the concepts expressed in the texts.  These concepts and relations provide a representation of the meaning expressed by the texts."   (Doc. 66-1, 7:28-36).  Later in the patent, the "message category information, which includes message category identification information and message category descriptive information, is then forwarded to parser and semantic tagger 106 which uses various syntactic and semantic analysis techniques to parse the message category information and extract concepts which represent the message category. . . . [and later a lexical database] organizes concepts using various semantic relation such as synonyms or hyponyms."   (Doc. 66-1, 10:59-67, 11:1-6).

Technology Innovations asserts that Open Text's construction violates claim differentiation.  Claim 1, the independent claim provides that "constructing semantic models for a plurality of message categories"; and claim 2 provides that "constructing the semantic models for the plurality of message categories comprises . . . receiving text segment from a natural language processing information retrieval system . . . [and] extracting knowledge representations from the text segments."   (Doc. 66-1, 17, 5:5-31).   Technology Innovations asserts that the same language in claim 2 was used by Open Text in construing claim 1 which renders claim 2 redundant.

In the instant case, claim 2 provides 4 limitations all of which are not found in claim 1. The first limitation of "receiving description for the plurality of message categories" is not in Open Text's construction.   The second limitation of "receiving text segments from a natural language processing information retrieval system based on the descriptions" requires a "natural language processing information retrieval system," and Open Text's construction does not provide that it

retrieve text segments from a natural language processing information retrieval system, but instead states that it uses natural language processing, which is much broader than the language in claim 2. The third limitation provides "extracting knowledge representations from the text segments" whereas Open Text's construction extracts concepts and relations and does not refer to a knowledge representation to make a semantic model.   Open Text's construction does not render claims 1 and 2 redundant, and therefore, Open Text has not violated the claim differentiation doctrine.

Open Text's construction of the phrase is consistent with the terms as set forth in the present invention.   Therefore, the Court will construe the phrase "Constructing a semantic model for the message" as follows: "Extracting the meaning of each MESSAGE CATEGORY from the descriptive text associated with each MESSAGE CATEGORY by: (1) using natural language processing and retrieving text segments (different than the words of the text) that relate to the meaning of the text; and then (2) extracting concepts and relations from the retrieved text segments to represent the meaning of the text segments."

### G.   Constructing a Semantic Model for the Message (Disputed Term 9)

Technology Innovations asserts that the phrase "constructing a semantic model for the message" does not need construction because the separate terms of "semantic model" and "message" have already been constructed.   If, however, the Court determines that this phrase needs construing, Technology Innovation asserts that the only term that needs defining is the word "construction" and that should be given its plain meaning of "building."   Open Text asserts that the construction should be "extracting the meaning of the MESSAGE by extracting concepts and relations from the meta-information of the MESSAGE to represent the meaning of the MESSAGE.

The construction of the SEMANTIC MODEL of the MESSAGE triggers performance of the compare, classify and determine steps."   (Soc. 162-1).

Open Text asserts that the patent provides support for its construction.   The patent provides "the present invention parses the outgoing message to extract meta-information (or functional fields) from the outgoing message (step 86)."   (Doc. 66-1, 7:61-63)   "The contents of the meta-information or the functional fields are then processed by a knowledge extraction system, such as the KNOW-IT system to extract knowledge representations for the outgoing message (step 88).   (Doc. 66-1, 8:5-9).   Open Text asserts that there are differences between constructing semantic models for the message categories and constructing a semantic model for the message. The semantic models for the message categories require two steps using natural language processing whereas the semantic model for the message only requires one step and there is no natural language processing as shown in Figure 6 of the patent.   The Court reviewed the terms of the patent and will construe this phrase as "extracting the meaning of the MESSAGE by extracting concepts and relations from the meta-information of the MESSAGE to represent the meaning of the MESSAGE."

Open Text argues that a further sentence should be added, namely, "The construction of the SEMANTIC MODEL of the MESSAGE triggers performance of the compare, classify and determine steps."   Open Text argues that first the semantic model of the plurality message categories is constructed, then the semantic model of the message is constructed, and then the next step is to compare, classify and determine.   The Court agrees that these are the next steps in the patent process as shown by the terms "comparing," "classifying" and "determining" in the language of the claim 1. At the hearing, Technology Innovations stated that there was no basis for this limitation, but failed to cite to anything, nor did it raise an objection in the briefs filed prior to

the hearing. (Tr. p. 53-54).     Therefore, the Court determines that "constructing a semantic model for the message" is construed as "extracting the meaning of the MESSAGE by extracting concepts and relations from the meta-information of the MESSAGE to represent the meaning of the MESSAGE. The construction of the SEMANTIC MODEL of the MESSAGE triggers performance of the compare, classify and determine steps."

### H.   Comparing the Semantic Model of the Message With the Semantic Models for the Plurality of Message Categories (Disputed Term 10)

Technology Innovations asserts that the phrase "comparing the semantic model of the message with the semantic models for the plurality of message categories" does not need construction because most of the words have been defined previously, and the term "comparing" can be defined as "examining" or "checking." Technology Innovations would be agreeable to construe the term "comparing" as "examining for similarities or differences." Technology Innovations argues while the purpose of comparing "may be to determine a degree of similarity, the comparing step does not necessarily *include or incorporate* determining a "measurement" of similarities (or differences)."   (Doc. 139, p. 39).   Technology Innovations cites to the Abstract in support of its argument, which provides, "[t]he semantic model of an outgoing message is compared with the semantic models of the message categories to determine a degree of similarity between the semantic models."   (Doc. 66-1, Abstract, see also, 6:4-8). It also cites to the Summary of the Invention which provides, "[a]ccording to an embodiment, the present invention compares the semantic model of the message with the semantic models for the plurality of message categories and determines a degree of similarity between the semantic model of the message and the semantic model for each message category in the plurality of message categories" (Doc. 66-1,

2:66-67, 3:1-4), and further cites to the "outgoing message may then be classified based on the degree of similarity obtained from the comparison performed in step 56 (step58)." (Doc. 66-1, 6:4-8, see also 12:35-39, "assesses the degree of similarity between the message semantic model and message category semantic models").

Open Text asserts that this phrase should be construed as follows:   "[d]etermining a degree of similarity between the SEMANTIC MODEL for the MESSAGE and each previously constructed SEMANTIC MODEL for the multiple MESSAGE CATEGORIES."   Open Test argues that the phrase in the claim needs construction to show that the "classifying" term requires using the comparison of the semantic models for the message and the message categories that were constructed in disputed terms 8 and 9. Open Text and Technology Innovations cite to the same portions of the patent for their arguments.   The patent contains at least three places which state the following phrase: "determining a degree of similarity." (Doc. 66-1, Abstract, 6:4-6, 12:35-39). The language used by Open Text mirrors that of the specification, and the Court finds that this phrase should be construed as follows: "[d]etermining a degree of similarity between the SEMANTIC MODEL for the MESSAGE and each previously constructed SEMANTIC MODEL for the multiple MESSAGE CATEGORIES."

**M.   Classifying the Message Based on the Comparison (Disputed Term 11)**

Technology Innovations asserts that the phrase "classifying the message based on the comparison" does not require construction because it is comprised of ordinary words with the exception of "message," however if the Court must construe the terms then Technology Innovations argues that this phrase should be construed as "identifying to which message category,

if any, a message belongs, using the comparison of semantic models (directly or indirectly)." Technology Innovations argues that the beginning of its construction is similar to the beginning of Open Text's construction.    Technology Innovations begins, "[i]dentifying to which message category" and Open Text begins, "[a]fter the comparison, identifying the MESSAGE as belonging to each MESSAGE CATEGORY." Technology Innovations asserts that Open Text's construction reads additional limitations in the phrase "for which the degree of similarity satisfies a preset threshold for that MESSAGE CATEGORY."    Technology Innovations cites to a number of places in the patent where the term "classify" or "classification" are used, and the definitions are varied. (See, Doc. 66-1, Abstract, "message is classified"; 1:44-48 "classification of information based on its content. . . based on the classification;" 2:60-65 "message is classified based on the comparison. The present invention then uses the classification information for the message;" and, 3:4-8 "[a] message is classified as belonging to a message category.").

Open Text argues that Technology Innovations' construction fails to provide for what happens after a message is classified.   Open Text asserts that this phrase must be construed to include the result of the classification which is the degree of similarity, and determine if the degree of similarity satisfies a preset threshold.   Open Text claims that Technology Innovations' construction fails to contain a metric to determine whether a message belongs to a message category.   Open Text contends that Technology Innovations would have a message compared to the message categories to determine if the message belongs in a message category.   Open Text argues that after having looked to determine if the message had similarities with a message category, some determination must be made based on this comparison to determine if this message belongs to this message category.   Open Text asserts that a metric must be used to determine if a message belongs in a message category, arguing that if no metric is used, then the question

becomes does the message have to be 10% identical, 50% identical, or 100% identical to the message category to be considered similar to the message category.   The patent provides that "[t]he outgoing message is classified based on the degree of similarity obtained from the comparison," (Doc. 66-1, Abstract) and "[i]f the degree of similarity exhibited between a message category semantic model and the outgoing message semantic model is higher than the threshold degree of similarity metric for that message category, then the outgoing message may be classified as belonging to that message category." (Doc. 66-1, 12:42-47).

Open Text agrees that the terms "classify" and "classification" have different meanings within the patent, such as "a classification guide" is different than "classifying a message."   (Tr. p. 169). Open Text asserts that if "classify" and "classification" have different meanings within the patent then this term must be defined to clarify its meaning within this phrase.

To classify a message based on the comparison, the Court determines that after the comparison is completed between the message and the message categories, the patent requires that a determination be made as to the degree of similarity that satisfies a preset threshold. The degree of similarity must be determined at the classifying step prior to proceeding to the determining step. If the degree of similarity is not determined at the classifying step, then no determination can be made as to whether the message is sufficiently similar to a message category or not. The Court finds that a metric must be employed.   Therefore, the Court construes this phrase as follows: "[a]fter the comparison, identifying the MESSAGE as belonging to each MESSAGE CATEGORY for which the degree of similarity satisfies a preset threshold for that MESSAGE CATEGORY."

**N.      Determining if the Message can be Distributed to the Recipient Based on the Classification of the Message (Disputed Term 12)**

Technology Innovations begins by proposing that the meaning of "can be" in the phrase "determining if the message can be distributed to the recipient based on the classification of the message" should be construed as "capable of being." (Tr. p. 64). The Court finds that the term "can be" does not need to be further defined, and the plain meaning of the terms is easily understandable.

Open Text proposes the following construction: "After the classification, determining if the distribution of the MESSAGE to the RECIPIENT would violate any security policy for the secure domain using the security clearance level of the MESSAGE CATEGORIES associated with the MESSAGE as a result of the classification."  Technology Innovations claims that any language as to security clearance levels is not in the claim, and Open Text is importing limitations into the claim. Technology Innovation also argues that Open Text erroneously relied on the embodiments in the patent to limit the independent claims by adding the terms "secure" and "security." Open Text asserts that the '613 patent concerns security as evidenced by the title, abstract, and the rest of the patent. As the Court determined above, it will permit the terms "secure" and "security" to be used in the claim construction and does not find that using these terms violates the doctrine of claim differentiation. The Abstract provides that this patent is "[t]echniques for controlling distribution of information for a secure domain by automatically detecting outgoing messages which violate security policies corresponding to the secure domain. . . A determination is made, based on the classification of the outgoing message, if distribution of the outgoing message would violate a security policy for the secure domain.  Distribution of the outgoing message is allowed if no security policy is violated." (Doc. 66-1, Abstract). Clearly, this patent

involves security and secure domains. The Background of the Invention also contains the concept of security and secure domains. As the Court determined above, it will permit the terms "secure" and "security" to be used in the claim construction and does not find that using these terms violates the doctrine of claim differentiation or improperly imports the embodiments into the independent claims to limit them.

Open Text then asserts that the determining step includes two parts, first a rule which is a security policy, and then message category information which is a security clearance level. Open Text cites to the Abstract section in the prior paragraph. Later in the patent, Open Text cites, "[t]he present invention is a meaning-based boundary controller which controls the distribution of information crossing the boundary of a secure domain by automatically detecting outgoing messages which violate security policies corresponding to that security domain." (Doc. 66-1, 4:21-25). These citations to the patent show that Open Text's construction using the terms "determining if the distribution of the message to the recipient would violate any security policy" is appropriate.

Open Text asserts that the determining step should include the following, "using the security clearance level of the message categories associated with the message." Open Text then cites to the patent which provides, "[a]fter an outgoing message has been classified, the present invention may determine[s], based on the outgoing message classification, if the outgoing message may be distributed outside the boundaries of the secure domain . . . In one embodiment, the boundary controller computer system may be configured to determine the security clearance level of the message category corresponding in the message classification and compare it with the security clearance levels of the outgoing message's sender and recipients." (Doc. 66-1, 9:59-67, 10:1-8). Open Text's construction is found within the patent.

Technology Innovations asserts that Open Text's construction violates claim differentiation and relies on the embodiments. Technology Innovations states the determining step construction in claim 1 renders claim 19 redundant or superfluous. Open Text asserts that claim 19 provides after the determining clause, the following occurs: "permitting distribution of the message to the recipient if the security policy is not violated." (Doc. 66-1, 18:61-62). Open Text asserts that in its claim construction for claim 1, it does not provide for what happens after a determination is made. Therefore, Open Text asserts that claim 19 is not superfluous. *See, supra, Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007). The Court agrees that Open Text's construction does not include what occurs after it is determined that a message can be distributed. Therefore, the Court determines that no violation of the claim differentiation doctrine occurred. The Court will construe this phrase as "[a]fter the classification, determining if the distribution of the MESSAGE to the RECIPIENT would violate any security policy for the secure domain using the security clearance level of the MESSAGE CATEGORIES associated with the MESSAGE as a result of the classification."

## I.   Permitting Distribution of the Message to the Recipient if the Security Policy is Not Violated (Disputed Term 13)

The permitting clause, "permitting distribution of the message to the recipient if the security policy is not violated" is in dependent claims 19 and 41. Technology Innovations asserts that this phrase does not need any construction or in the alternative the word "permitted" means "allowing." Open Text construes this phrase as, "[i]f it is determined that a security policy is not violated, forwarding the MESSAGE to the RECIPIENT." Technology Innovations argues that the term "forwarding" used by Open Text is improper and is not the same as permitting or allowing. Open Text asserts that the term "forwarding" is in the specification whereas the term "allowing"

is not. Open Text cites to the Summary of the Invention as follows: "[m]essages which do not violate any security policies may be forwarded to the recipient."   (Doc. 66-1, 3:20-23).    The Court determines that Open Text's construction of this phrase changes the meaning slightly by not incorporating the term "may."   Therefore, based upon the terms of the patent, and the Court will construe this phrase as follows: "If it is determined that a security policy is not violated, the MESSAGE may be forwarded to the RECIPIENT."

## IX.    Conclusion

Based upon a careful review of the patent and the submissions of the parties, it is **RESPECTFULLY RECOMMENDED** that the disputed language in claims 1, 19, 23 and 41 be constructed as follow:

| No. | Term | Construction |
|---|---|---|
| 1. | controlling distribution of a message from a sender to a recipient | Controlling the delivery of a MESSAGE at a boundary of a secure domain by determining whether delivery of the MESSAGE violates a security policy. |
| 2. | distribution | See No. 1. |
| 3. | message | An electronic communication created by a SENDER for a specified RECIPIENT outside the secure domain, which includes (1) text and (2) meta-information about the specified RECIPIENT. A MESSAGE originates in a secure domain and is intended for a destination outside a secure domain. |
| 4. | sender | A person who is a member of a secure domain who sends a MESSAGE to a specified RECIPIENT |
| 5. | recipient | A person who is not a member of the secure domain and is specified by the SENDER to receive the MESSAGE. |
| 6. | semantic model | A set of structured knowledge representations which consist of concepts and relations that represent the meaning expressed by the MESSAGE/MESSAGE CATEGORY. |

| 7. | message categories | Categories to which messages can be classified as belonging, where each category (1) is associated with descriptive text, and (2) has an associated security clearance level independent of SENDER or RECIPIENT. |
|---|---|---|
| 8. | constructing semantic models for a plurality of message categories | Extracting the meaning of each MESSAGE CATEGORY from the descriptive text associated with each MESSAGE CATEGORY by: (1) using natural language processing and retrieving text segments (different than the words of the text) that relate to the meaning of the text; and then (2) extracting concepts and relations from the retrieved text segments to represent the meaning of the text segments. |
| 9. | constructing a semantic model for the message | Extracting the meaning of the MESSAGE by extracting concepts and relations from the meta-information of the MESSAGE to represent the meaning of the MESSAGE. The construction of the SEMANTIC MODEL of the MESSAGE triggers performance of the compare, classify and determine steps. |
| 10. | comparing the semantic model of the message with the semantic models for the plurality of message categories | Determining a degree of similarity between the SEMANTIC MODEL for the MESSAGE and each previously constructed SEMANTIC MODEL for the multiple MESSAGE CATEGORIES. |
| 11. | classifying the message based on the comparison | After the comparison, identifying the MESSAGE as belonging to each MESSAGE CATEGORY for which the degree of similarity satisfies a preset threshold for that MESSAGE CATEGORY. |
| 12. | determining if the message can be distributed to the recipient based on the classification of the message | After the classification, determining if the distribution of the MESSAGE to the RECIPIENT would violate any security policy for the secure domain using the security clearance level of the MESSAGE CATEGORIES associated with the MESSAGE as a result of the classification. |
| 13. | permitting distribution of the message to the recipient if the security policy is not violated. | If it is determined that a security policy is not violated, the MESSAGE may be forwarded to the RECIPIENT. |

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on October 22, 2014.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record
Unrepresented Parties